## Commonwealth ex rel. Gryger, Appellant, *v.* Burke.

Argued March 18, 1953. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross, Gunther and Wright, JJ.

*Randolph C. Ryder,* Deputy Attorney General, with him *Frank P. Lawley, Jr.,* Assistant Deputy Attorney

General and *Robert E. Woodside,* Attorney General, for appellant.

*Miles Warner,* Assistant Voluntary Defender, with him *Herman I. Pollock,* Voluntary Defender, for appellee.

OPINION BY RHODES, P. J., July 14, 1953:

This is an appeal by the Attorney General on behalf of the Commonwealth of Pennsylvania from an order of the Court of Common Pleas No. 7 of Philadelphia County granting a writ of habeas corpus and setting aside the sentence of life imprisonment imposed upon relator, Francis Joseph Gryger, on November 27, 1944, by the Court of Oyer and Terminer of Philadelphia County (No. 461, June Sessions, 1943), as an habitual criminal under section 1108 of The Penal Code, Act of June 24, 1939, P. L. 872, 18 PS §5108.

No appeal was taken from this judgment of sentence, and the present habeas corpus proceeding is the last of a series instituted by relator before various tribunals, including this Court, a United States District Court, and the Supreme Court of this Commonwealth. The judgment of the latter refusing relief was affirmed by the Supreme Court of the United States in *Gryger v. Burke,* 334 U.S. 728, 68 S. Ct. 1256, 92 L. Ed. 1683, rehearing denied 335 U.S. 837, 69 S. Ct. 13, 93 L. Ed. 389.

The present proceeding arises from relator's petition for a writ of habeas corpus filed in the Court of Common Pleas of Philadelphia County on October 9, 1951. The District Attorney of Philadelphia County filed an answer in which it was averred that the questions raised by relator in his petition had been passed upon and decided by the Supreme Court of the United States. After hearing, Judge Levinthal, of the Court of Common Pleas No. 7, by opinion dismissed the petition on December 4, 1951. Thereafter, however, relator presented a

petition for rehearing. The District Attorney of Philadelphia County (successor of the District Attorney who filed the answer to relator's petition) in his answer to the petition for rehearing, although recognizing the decision of the Supreme Court of the United States in *Gryger v. Burke,* supra, as probably conclusive against relator, did not oppose the granting of a writ of habeas corpus upon proper proofs being made by relator.

On February 6, 1952, relator's petition for rehearing was allowed, and on May 29, 1952, the Court of Common Pleas No. 7, in an opinion by Judge Levinthal, granted a writ of habeas corpus and ordered the sentence of life imprisonment imposed upon relator set aside.

Prior to such order, the Attorney General had caused his appearance to be entered on March 29, 1952, in the court below, and on August 26, 1952, appealed to our Supreme Court which, on December 5, 1952, remitted the record to this Court, the jurisdiction of such an appeal being in the Superior Court.

Relator has moved to quash the appeal on the ground that the Attorney General is without legal authority or power to supersede the District Attorney in the present proceeding. The Attorney General has replied. The motion to quash is denied. The Attorney General is the chief law officer of the Commonwealth, and his authority is co-extensive with the public legal affairs thereof. In taking this appeal the Attorney General acted within his power and authority. This clearly appears by reference to the pertinent statutes and relevant decisions of the Supreme Court of this Commonwealth.

Section 903 of The Administrative Code, Act of April 9, 1929, P. L. 177, Art. IX, 71 PS §293, provides that:

"The Department of Justice shall have the power and its duty shall be: . . .

"(b) To represent the Commonwealth, or any department, board, commission, or officer thereof, in any litigation to which the Commonwealth or such department, board, commission, or officer, may be a party, or in which the Commonwealth or such department, board, commission, or officer, is permitted or required by law to intervene or interplead."

The Act of May 28, 1915, P. L. 616, §1, as amended by the Act of July 7, 1919, P. L. 731, §1, 12 PS §145, provides:

"In all cases at law or in equity, in any court or before any officer, board, commission, or other body having jurisdiction of the matter, in which the Commonwealth or any officer thereof may be a party, or in which the Commonwealth may have any interest, the Commonwealth shall have the right to intervene, and to appear, plead, prosecute, defend, or appeal, as other parties litigant; . . ."

In *Com. ex rel. Minerd v. Margiotti*, 325 Pa. 17, 30, 188 A. 524, 530, our Supreme Court stated: "We conclude . . . that the Attorney General of Pennsylvania is clothed with the powers and attributes which enveloped Attorneys General at common law, including the right to investigate criminal acts, to institute proceedings in the several counties of the Commonwealth, to sign indictments, to appear before the grand jury and submit testimony, to appear in court and to try criminal cases on the Commonwealth's behalf, and, in any and all these activities to supersede and set aside the district attorney when in the Attorney General's judgment such action may be necessary." The court also stated, page 33 of 325 Pa., page 531 of 188 A.: "We agree with what was said in State ex rel. v. Robinson, supra [101 Minn. 277, 112 N.W. 269], 'We have numerous instances where particular duties are expressly imposed upon the county attorney, yet it is clear that the attorney general has the

right, in virtue of his office, to cooperate with or act independently of that official in all cases where the public interests justify it.' " See, also, *Margiotti Appeal,* 365 Pa. 330, 75 A. 2d 465; *Com. ex rel. Margiotti v. Orsini,* 368 Pa. 259, 81 A. 2d 891; *Matson v. Margiotti,* 371 Pa. 188, 88 A. 2d 892; *Grand Jury Investigation of Western State Penitentiary,* 173 Pa. Superior Ct. 197, 96 A. 2d 189; *Com. ex rel. Kunkle v. Claudy,* 171 Pa. Superior Ct. 557, 91 A. 2d 382.

The action of the Attorney General may be considered as intervention in a civil case rather than supersession or displacing a district attorney in a criminal proceeding. Such intervention, in a matter of general public importance relating to the peace and good order of the Commonwealth, is clearly within the scope of the authorized and recognized power of the Attorney General. Procedural uniformity in habeas corpus proceedings and finality of judgment in this class of litigation can better be attained by an intervention of the Attorney General in the public interest.

We are of the opinion that the basic question (whether the failure to provide relator with the assistance of counsel at the fourth-offender proceeding constituted a denial of due process) has been determined previously and conclusively adjudicated by the Supreme Court of the United States, and that a court of common pleas may not review the judgment of that Court in the absence of proper authorization from a superior tribunal.

We shall recite the relevant facts: As to the first three convictions upon which the fourth-offender proceeding was based, no consequential question is raised. The fourth conviction was on bill No. 461, June Sessions, 1943, in the Court of Oyer and Terminer or Court of Quarter Sessions of Philadelphia County, charging burglary. Relator had been indicted on June 23, 1943,

on this bill and also on bill No. 462, June Sessions, 1943, charging aggravated assault and battery arising out of the same incident. On June 28, 1943, he pleaded not guilty to these indictments. With those two indictments pending he was further indicted on July 21, 1943, upon twelve bills, Nos. 251—262, July Sessions, 1943, each charging burglary and receiving stolen goods. On July 26, 1943, he pleaded guilty to the second count, receiving stolen goods, in each of the last mentioned twelve bills. He was represented by counsel at the time. The court thereupon imposed consecutive sentences to the Eastern State Penitentiary of not less than 2½ years nor more than 5 years on bills Nos. 251 and 252. No sentence was imposed on any of the other bills.

Following an unsuccessful attempt to escape from prison, for which he was sentenced, relator was brought to trial on bills Nos. 461 and 462, June Sessions, 1943, on February 25, 1944. After trial, at which he was also represented by counsel, relator was convicted on both bills and was sentenced on bill No. 461 to a term of not less than 5 years nor more than 10 years in the Eastern State Penitentiary to be computed from the expiration of certain unexpired sentences.

On May 4, 1944, a proceeding was instituted by the District Attorney of Philadelphia County, pursuant to section 1108 (d) of The Penal Code, 18 PS §5108 (d), at No. 461, June Sessions, 1943, charging relator with having committed a fourth felony within the five years of the last prior felony conviction of the classes specified in section 1108 (a) of The Penal Code, 18 PS §5108 (a). A copy of the complaint was served upon relator on May 9, 1944, and on November 27, 1944, he had a hearing before Judge KUN, in the Court of Oyer and Terminer of Philadelphia County. He was not represented by counsel at the hearing. Upon inquiry at this hearing relator acknowledged in open court that he was the same person

charged in the complaint with the previous felony convictions. The court thereupon sentenced him to life imprisonment in the Eastern State Penitentiary, and vacated the prior unexpired sentences.

After a review of the entire record, we are convinced that all the contentions presently advanced were presented to the Supreme Court of the United States and considered by such court, and that consequently the Court of Common Pleas of Philadelphia County and this Court are concluded by the Supreme Court's decision in *Gryger v. Burke,* supra, 334 U.S. 728, 68 S. Ct. 1256, 92 L. Ed. 1683. Mr. Justice JACKSON, speaking for the Supreme Court, in his opinion said (page 1686 of 92 L. Ed.) :

"Beginning in 1927, at the age of seventeen, this petitioner [relator] has been arrested eight times for crimes of violence, followed in each instance by plea of guilty or by conviction. Respondent states, and petitioner does not deny, that of the last 20 years of his life, over 13 years have been spent in jail. A schedule of his pleas or convictions and pertinent data is appended, post, p. 1687, those in italics being the four on the basis of which an information was filed charging him to be a fourth offender. Brought into court on that limited charge, he acknowledged his identity as the convict in each of the previous cases and he was given a life sentence pursuant to the Act. He was without counsel and it is said that he was neither advised of his right to obtain counsel nor was counsel offered to him.

"It rather overstrains our credulity to believe that one who had been a defendant eight times and for whom counsel had twice waged defenses, albeit unsuccessful ones, did not know of his right to engage counsel. No request to do so appears. The only question of fact before the court on the fourth offender charge was whether he was the same person who was convicted in

the four cases. This he then admitted and does not now deny. The only other question was sentence, and it does not appear that any information helpful to petitioner was unknown to the court.

"It is said that the sentencing judge prejudiced the defendant by a mistake in construing the Pennsylvania Habitual Criminal Act in that he regarded as mandatory a sentence which is discretionary. It is neither clear that the sentencing court so construed the statute, nor if he did that we are empowered to pronounce it an error of Pennsylvania law. It is clear that the trial court, in view of defendant's long criminal record, considered he had a duty to impose the life sentence and referred to it as one 'required by the Act.' But there is nothing to indicate that he felt constrained to impose the penalty except as the facts before him warranted it. And it in any event is for the Pennsylvania courts to say under its law what duty or discretion the court may have had. Nothing in the record impeaches the fairness and temperateness with which the trial judge approached his task. His action has been affirmed by the highest court of the Commonwealth."

Relator's most recent, although not new, contentions, with which the court below concurred, are that there was information helpful to him that was unknown to the trial court, and that relator was in fact prejudiced by the trial judge's mistaken construction of the Habitual Criminal Act and the imposition of sentence thereunder. If reviewable by this Court we do not agree that the record factually establishes such contentions.

The information that relator regards as being helpful to him has to do largely with his conviction for burglary at No. 461, June Sessions, 1943. He contends that when he was called to answer bills Nos. 251-262, July Sessions, 1943, he was at the same time called to answer bills Nos. 461 and 462, June Sessions, 1943, and

that disposition of all charges was made at that time. He claims that he pleaded guilty to receiving stolen goods on bills Nos. 251-262 pursuant to an agreement with prosecution officials that upon doing so the charges upon the first counts in such indictments together with the charges set forth in bills Nos. 461 and 462, to which he had pleaded not guilty, would not be further prosecuted;[1] that the sentences imposed on bills Nos. 251 and 252 were, in effect, a final disposition of the charges in bills Nos. 461 and 462. In support thereof he sets forth that upon entering the pleas of guilty to bills Nos. 251— 262 the court heard evidence not only as to the offenses charged in bills Nos. 251—262, but also as to the offenses charged in bills Nos. 461 and 462; that the notes of testimony taken at the reception of such pleas were captioned to Nos. 461 and 462 as well as Nos. 251—262; that certain articles of clothing relevant as evidence in the proof of the offenses charged in bills Nos. 461 and 462, were returned to him after the entry of the pleas, indicating the prosecution was through with such articles as final disposition had been made of such charges; and, finally, that, having received indeterminate penitentiary sentences upon entering such pleas, which sentences were improper for the offense of receiving stolen goods, he must have been sentenced on the burglary charge in bill No. 461.[2] The above circumstances were so unusual, argues relator, that they should have

---

[1] Relator's counsel has testified that he had no knowledge of any such understanding.

[2] Relator filed another petition for writ of habeas corpus in the Pennsylvania Supréme Court on March 21, 1949, No. 239, Miscellaneous Docket No. 9, Eastern District, in which he alleged that he had been compelled to stand trial for the second time on bills Nos. 461 and 462, June Sessions, 1943, in violation of Art. I, §10, of the Constitution of the Commonwealth of Pennsylvania. The District Attorney of Philadelphia County filed an answer denying the allegation. The petition was denied May 28, 1949.

been called to the attention of the court at the fourth-offender proceeding. Had counsel been provided for him at such proceeding, he continues, these matters would have been called to the attention of the trial judge.

Our examination of the relator's brief filed with the Supreme Court of the United States, together with the opinion of that court, reveals that all of the above matters, with the possible exception of the clothing exhibits, which we do not regard as significant, were urged upon the United States Supreme Court when relator's case was argued before it.

Relator's contention that Judge KUN, the sentencing judge, misconstrued the Habitual Criminal Act in that he regarded the life imprisonment sentence provided therein as mandatory rather than discretionary is based upon certain statements made by the judge in the course of the proceeding at which relator was sentenced.

The Supreme Court of the United States concluded that there was nothing in the record, which included the remarks of Judge KUN, to indicate that the sentencing judge felt constrained to impose the penalty of life imprisonment except as the facts before him warranted it. Nothing has been added to support an independent evaluation to the contrary by the court below. Section 1108 (b) of the Act of 1939 provides that the imposition of a life imprisonment sentence upon a convicted fourth offender is in "the discretion of the judge trying the case." Section 1108 (d) says that the court "may" sentence to life imprisonment. In *Com. ex rel. Foster v. Ashe,* 336 Pa. 238, 240, 8 A. 2d 542, the Supreme Court recognized that the imposition of a life sentence under this Act was discretionary. We will not presume that Judge KUN undertook to impose sentence without being familiar with the provisions of the Habitual Criminal Act. Nor is the inference warranted that he miscon-

strued the Act. Furthermore, the imposition of sentence is the sole prerogative of the court. As said in *Townsend v. Burke,* 334 U.S. 736, 741, 68 S. Ct. 1252, 92 L. Ed. 1690, 1693: "The sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus." The sentence of life imprisonment imposed upon relator was within the provisions of the Act and in accordance with the law. There is nothing of record which would entitle relator to a change of his sentence. Therefore the exercise of discretion by the sentencing judge is not reviewable on habeas corpus any more than matters of fact passed upon by a jury may be re-examined by that method. See *Com. ex rel. Geiger v. Burke,* 371 Pa. 230, 89 A. 2d 495. A valid permissible sentence is not subject to such collateral attack.[3] Of course, habeas corpus lies to correct a void or an illegal sentence. *Com. ex rel. Elliott v. Baldi,* 373 Pa. 489, 493, 96 A. 2d 122.

There is no authority which would permit us, even if we were so disposed, to affirm a ruling which is directly contrary to a decision of the Supreme Court of the United States based upon essentially the same facts. The only significant change in the situation with respect to the two hearings before Judge Levinthal is that at the first hearing the District Attorney opposed relator's petition, while at the second hearing the District Attorney, in effect, acquiesced in relator's prayer for relief. Relator contends, in part, that he has established a denial of due process by reason of the District Attor-

---

[3] See *Fayerweather v. Ritch,* 195 U. S. 276, 307, 25 S. Ct. 58, 49 L. Ed. 193, 213: "A judgment is a solemn record. Parties have a right to rely upon it. It should not lightly be disturbed, and ought never to be overthrown or limited by the oral testimony of a judge or juror of what he had in mind at the time of the decision."

ney's admissions, at the second hearing, of certain contentions. But they have only inferential value. One is to the effect that the sentencing judge erred in believing the imposition of a sentence of life imprisonment to be mandatory. Our examination of the record fails to reveal any factual basis for making such an admission. A relator who avers that he has been denied due process has the burden of affirmatively establishing circumstances constituting such a denial. *Com. ex rel. Sawchak v. Ashe,* 169 Pa. Superior Ct. 529, 83 A. 2d 497; *Com. ex rel. Johnson v. Dye,* 159 Pa. Superior Ct. 542, 548, 49 A. 2d 195. See, also, *Com. ex rel. Chambers v. Claudy,* 171 Pa. Superior Ct. 115, 90 A. 2d 383. While an appellate court will not weigh conflicting evidence in a habeas corpus proceeding, it may examine the evidence sent up with the record to test the right of the court below to make the order complained of. *Com. ex rel. Master v. Baldi,* 166 Pa. Superior Ct. 413, 419, 72 A. 2d 150, allocatur refused 166 Pa. Superior Ct. xxiv, certiorari denied 340 U.S. 866, 71 S. Ct. 88, 95 L. Ed. 632. Neither the evidence nor the statement of the trial judge made at the time of sentence supports the conclusion of the court below "that the trial court misinterpreted the Fourth Offender Act," and assumed "the sentencing provision of the statute to be mandatory rather than discretionary," and that therefore in the absence of counsel there was a denial of due process.[4] In *Com. ex rel. Master v. Baldi,* supra, 166 Pa. Superior Ct. 413, 419, 72 A. 2d 150, 153, we said: "However, the ultimate conclusions of law to be drawn from given facts are

[4] Judge LEVINTHAL had disposed of the trial on bill No. 461, June Sessions, 1943, involving the fourth offense, as follows: "We held, and we now reiterate, that since the relator was represented by counsel when he was convicted of the fourth offense, he should have taken an appeal from that sentence and could not utilize the writ of habeas corpus as a substitute for an appeal."

matters for an appellate court. 'Especially in cases arising under the Due Process Clause [is it] important to distinguish between issues of fact that are here foreclosed and issues which, though cast in the form of determinations of fact, are the very issues to review which this Court sits': Watts v. Indiana, 338 U.S. 49, 69 S. Ct. 1347, 93 L. Ed. [1801, 1804]."

The conclusion of the court below is one which the Supreme Court of the United States refused to make on substantially the same record as is before us on the present appeal.

At most, relator's present petition (No. 1775, September Term, 1951, Common Pleas No. 7) is an elaboration of his prior petition (467 Misc. Docket No. 8, Supreme Court, Eastern District) which was passed upon by the Supreme Court of the United States. It has been repeatedly held that a petition for a writ of habeas corpus which is repetitious of previous petitions, and consists of averments which have been adjudicated, should be dismissed.[5]

We are impelled to reverse the order of the court below granting a writ of habeas corpus and setting aside relator's sentence as a fourth offender for the reason that the issues have been litigated and decided by the Supreme Court of the United States in *Gryger v. Burke,* supra. Furthermore, we are of the opinion that relator has suffered no denial of due process. No disposition

---

[5] *Com. ex rel. Orlando v. Smith,* 346 Pa. 42, 30 A. 2d 534; *Com. ex rel. Dugan v. Ashe,* 347 Pa. 588, 33 A. 2d 32; *Com. ex rel. Banks v. Claudy,* 370 Pa. 190, 88 A. 2d 53; *Com. ex rel. Gibbs v. Claudy,* 170 Pa. Superior Ct. 205, 85 A. 2d 621; *Com. ex rel. Campbell v. Claudy,* 171 Pa. Superior Ct. 282, 89 A. 2d 895, allocatur refused 171 Pa. Superior Ct. xxiv, certiorari denied 344 U. S. 869; *Com. ex rel. Baerchus v. Burke,* 172 Pa. Superior Ct. 400, 94 A. 2d 87; *Com. ex rel. Lorenzo v. Claudy,* 172 Pa. Superior Ct. 240, 93 A. 2d 911; *Com. ex rel. McMorris v. Claudy,* 172 Pa. Superior Ct. 283, 94 A. 2d 108.

having been made of bill No. 461, June Sessions, 1943, the indictment remained pending and relator was lawfully tried thereon, convicted, and subsequently sentenced as a fourth offender. Relator's contention that the evidence produced at the trial on that bill constituted proof of merely an attempt to commit burglary is immaterial, as, under the Habitual Criminal Act, convictions of attempts to commit the crimes enumerated therein stand in the same position as convictions of the completed crimes. Section 1108 (a) of The Penal Code, 18 PS §5108 (a).

The order of the court below is reversed, and the writ of habeas corpus is dismissed.