George V. BAXTER, Appellant,

v.

B. J. RHAY, Superintendent, Washington State Penitentiary, Walla Walla, Washington, Appellee.

No. 16172.

United States Court of Appeals Ninth Circuit.

May 28, 1959.

George V. Baxter, Walla Walla, Wash., in pro. per.

John J. O'Connell, Atty. Gen., M. Lawrence Ross, Stephen C. Way, Asst. Attys. Gen., for appellee.

Before STEPHENS, HAMLEY and JERTBERG, Circuit Judges.

STEPHENS, Circuit Judge.

The appellant, George Van Baxter, is presently serving a life sentence on a state conviction as an habitual criminal. The final link in the chain of evidence establishing this status was a conviction for second degree burglary. The appellant contends that this conviction is invalid because

(1) Evidence obtained by means of an unlawful search and seizure was used at the trial;

(2) Admissions obtained by coercion were introduced;

(3) The prosecution knowingly used false testimony;

(4) The State did not file an information against him nor bring him to trial within the statutory time limit; and

(5) The State denied him the right to appellate review because of his poverty and lack of education.

His petition for a writ of habeas corpus was denied by the District Court after a hearing, and the case is now before us on appeal. We find that the appellant's contentions are without merit.

█ The undisputed facts show that Baxter was accosted for questioning by two Seattle, Washington, patrolmen about four o'clock in the morning. He fled and warning shots were fired. He was captured and handcuffed after a chase. The burglary of which he was later convicted had not yet been discovered. Baxter claims that as soon as he was caught, one of the officers gave him a severe beating, and this continued off and on as long as he was being questioned by the two officers that arrested him. He made a number of admissions during their questioning but claims that he did so under compulsion and against his will solely to avoid further beatings. Both officers denied the use of any third-degree methods. He was searched by the arresting officers, and they claim to have found five Ronson lighters and two ball point pens in his pockets. The appellant claims, however, that these were picked up by the officers at the scene of the burglary.

Baxter was then taken to a police station for further questioning. He was examined for bruises, but none were found. (Mr. Baxter is a very dark skinned Negro.) He was then asked if he wished to be examined by a doctor; but he refused, saying that an examination by a police doctor would not do him any good. At the hearing in the District Court, he explained that his injuries were internal and not obvious.

"There was a knot sitting on my head. I am the type that puffs in, some people puff out. I am the type that puffs in. You wouldn't be able to see or observe it very well, but you certainly would be able to feel it." (Brief of Appellant, p. 52.)

(1). To take the second contention first, we cannot say on this record that the District Court erred in concluding that the appellant's admissions were not coerced.

The procedure followed by the District Court in hearing the testimony of the appellant and weighing it against the testimony given by the witnesses for the prosecution at the trial was proper. See Stein v. People of State of New York, 346 U.S. 156, 182, 73 S.Ct. 1077, 97 L.Ed. 1522; Palakiko v. Harper, 9 Cir., 209 F.2d 75, 84; United States ex rel. Master v. Baldi, 3 Cir., 198 F.2d 113, 117.

█ (2). The District Court did not pass on the allegations of illegal search and seizure, since nothing more was alleged than a search without probable cause. This disposition was correct. A state is not prevented by the Fourteenth Amendment of the United States Constitution from using evidence obtained by illegal search and seizure so long as the methods used do not "shock the conscience." Breithaupt v. Abram, 352 U.S. 432, 434, 77 S.Ct. 408, 1 L.Ed. 2d 448, and cases therein cited.

█ (3). The appellant attempts to show that the prosecution knowingly used false testimony by pointing out alleged inconsistencies in the testimony of various witnesses. He argues that it is obvious by reason of their inconsistent testimony that one or the other of the policemen was not telling the truth and that the prosecutor's silence as to such inconsistency constituted his "acquiescence." Officer Conley was asked what happened at the drug store when they were there with the defendant.

"Well, from the physical evidence it was apparent that someone else had been involved, and we asked the defendant who was with him, and he wouldn't at any time say that a certain party was with him. He did say that there were two other col-

ored men." (Brief of Appellant, p. 36.)

On the other hand, Officer Hartzell, when asked whether he recalled the defendant's making any statement as to where he was from or what he was doing there at that time of the morning, said,

> "Well, he told us he was from Tacoma, and we had asked him if there was anyone else with him, and he refused to tell us." (Brief of Appellant, p. 47.)

The stories of the two arresting officers are also different with respect to the time appellant was searched. Officer Conley testified,

> "When I apprehended him I pushed him back against the house —I had my pistol on him—and held him at arm's length with my pistol against my side until the other officer came up, and then we pinned his arms and cuffed him behind. Then I searched him.
>
> \* \* \* \* \* \*
>
> " \* \* \* I found several articles on him—five Ronson lighters, I believe they were, and a couple of Paper Mate ball point pens. We then asked him what place he had broken into to get these articles, and he didn't answer. He just says, 'Well, I guess you caught me this time.' " (Brief of Appellant, pp. 35–36.)

Officer Hartzell testified as follows:

> " \* \* \* I finally arrived to where Officer Conley had the man, and we handcuffed him. At that time the defendant stated to us, he said, 'Well, you've got me this time.'
>
> "We then took the defendant—we asked him where he had been and what he had been doing, and he didn't give us any answer at that time. We then went back to where we had first observed the defendant and found that the drug store, the Henderson Drugs, had been broken into. We asked him if he had been

into the store, and he said, Yes, he had, and we then shook the defendant down and found that he had several articles which are in evidence, on his person." (Brief of Appellant, p. 46.)

The District Court treated these discrepancies as normal, saying that it would be much more suspicious if the testimony of the two policemen coincided on all points. We agree that the above two discrepancies are not enough to even suggest perjury. The arrest was made October 14, 1954, and the trial did not take place until February 10, 1955. Neither officer was subjected to any searching examination on the points involved, as far as the record before us indicates. It is easy to become confused about the details of events that are being witnessed. The inconsistencies related above do not show that any part of the police account of the arrest was fabricated. Necessarily, any inconsistency in the testimony was passed on by the jury.

(4). The appellant was arrested on October 13, 1954, charged on November 29, 1954, and his trial began February 19, 1955. Washington law provides that an indictment or information shall be filed within thirty days, unless good cause for not doing so be shown, and that trial must be held within sixty days, unless it is postponed on the defendant's application. (RCW 10.37.020 and 10.-46.010)

The District Court disposed of this issue summarily without taking evidence or making findings, on the ground that it did not raise a federal constitutional question. It is elementary that errors, if any, involving only state law do not deny due process.[1] Violation of a local ordinance requiring a prisoner to be brought before a magistrate promptly has been held not to deny due process. Crooker v. State of California, 357 U.S. 433, 437, 78 S.Ct. 1287, 2 L.Ed. 2d 1448. Yet if we assume *arguendo* that the detention without trial was ille-

---

1. Gryger v. Burke, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683.

gal under Washington law, it does not necessarily follow that there was a denial of due process. However, for a state to hold a prisoner indefinitely without a trial deprives him of his liberty without due process of law.[2] Just how long a defendant may be held without a trial is an issue which need not be decided in this case because the appellant here has been tried, and it does not appear that the detention before trial in any way affected the outcome; nor did it affect the length of time he had to serve, since he received a life sentence. The situation is akin to that where jurisdiction is obtained over a defendant by means of the crime of kidnaping. In Frisbie v. Collins, 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541, Mr. Justice Black, speaking for a unanimous court, stated,

> "This Court has never departed from the rule announced in Ker v. [People of State of] Illinois, 119 U. S. 436, 444, 7 S.Ct. 225, 229, 30 L.Ed. 421, that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will." [Footnote omitted.]

Although there may be cases where that analogy should not apply, we can see nothing in the circumstances of this case which would justify doing so. The federal rule that a prisoner must be brought before a magistrate without unnecessary delay after his arrest is not a part of due process. Compare Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479, with Cicenia v. La Gay, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523, and Crooker v. State of California, supra.

■ (5). The appellant also contends that he was unable to obtain appellate review in the state courts solely because of his ignorance and poverty, and that this is a violation of his constitutional rights under the doctrine of Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891. He alleges that he was unable to appeal *in propria persona* because he did not know how and was unable to hire counsel because he could not afford one. The District Court did not pass on this issue, and the record does not show what means are available to aid convicted defendants in processing their appeals *in propria persona*. However, it appears from an affidavit filed by the appellant in support of a motion before the District Court seeking appointment of counsel, that he knew of the possibility of getting a free transcript but chose not to apply for one.

> "That after affiant was convicted, and while still in the King County Jail, an able attorney took an interest in his case * * * and this attorney filed a petition for habeas corpus for petitioner which was denied; that this attorney did not appeal for petitioner because he realized the futility thereof without the aid of a Transcript of the trial proceedings which affiant could not obtain due to his indigence and the restrictive bar of the provisions of RCW 2.32.240 which permitted the trial court to refuse a convicted de-

---

2. Compare Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495. In Cole v. State of Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644, the Court said that "It is as much a vio-

lation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made."

fendant the trial transcript at county expense whether or not he believed such appeal would promote the interests of Justice; * * *"
[Transcript of Record, p. 62]

In these circumstances, it cannot be said that the right of appellate review guaranteed by the State to all convicted defendants was denied.

Affirmed.