(Slip Opinion) OCTOBER TERM, 2006 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## PHILIP MORRIS USA *v.* WILLIAMS, PERSONAL REPRESENTATIVE OF ESTATE OF WILLIAMS, DECEASED

### CERTIORARI TO THE SUPREME COURT OF OREGON

No. 05–1256. Argued October 31, 2006—Decided February 20, 2007

In this state negligence and deceit lawsuit, a jury found that Jesse Williams' death was caused by smoking and that petitioner Philip Morris, which manufactured the cigarettes he favored, knowingly and falsely led him to believe that smoking was safe. In respect to deceit, it awarded $821,000 in compensatory damages and $79.5 million in punitive damages to respondent, the personal representative of Williams' estate. The trial court reduced the latter award, but it was restored by the Oregon Court of Appeals. The State Supreme Court rejected Philip Morris' arguments that the trial court should have instructed the jury that it could not punish Philip Morris for injury to persons not before the court, and that the roughly 100-to-1 ratio the $79.5 million award bore to the compensatory damages amount indicated a "grossly excessive" punitive award.

*Held:*

1. A punitive damages award based in part on a jury's desire to punish a defendant for harming nonparties amounts to a taking of property from the defendant without due process. Pp. 4–10.

(a) While "[p]unitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition," *BMW of North America, Inc.* v. *Gore,* 517 U. S. 559, 568, unless a State insists upon proper standards to cabin the jury's discretionary authority, its punitive damages system may deprive a defendant of "fair notice . . . of the severity of the penalty that a State may impose," *id.,* at 574; may threaten "arbitrary punishments," *State Farm Mut. Automobile Ins. Co.* v. *Campbell,* 538 U. S. 408, 416; and, where the amounts are sufficiently large, may impose one State's (or one jury's) "policy choice" upon "neighboring States" with different public policies, *BMW, supra,* at 571–572. Thus,

the Constitution imposes limits on both the procedures for awarding punitive damages and amounts forbidden as "grossly excessive." See *Honda Motor Co.* v. *Oberg*, 512 U. S. 415, 432. The Constitution's procedural limitations are considered here. Pp. 4–5.

(b) The Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury inflicted on strangers to the litigation. For one thing, a defendant threatened with punishment for such injury has no opportunity to defend against the charge. See *Lindsey* v. *Normet*, 405 U. S. 56, 66. For another, permitting such punishment would add a near standardless dimension to the punitive damages equation and magnify the fundamental due process concerns of this Court's pertinent cases—arbitrariness, uncertainty, and lack of notice. Finally, the Court finds no authority to support using punitive damages awards to punish a defendant for harming others. *BMW, supra,* at 568, n.11, distinguished. Respondent argues that showing harm to others is relevant to a different part of the punitive damages constitutional equation, namely, reprehensibility. While evidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk to the general public, and so was particularly reprehensible, a jury may not go further and use a punitive damages verdict to punish a defendant directly for harms to those nonparties. Given the risks of unfairness, it is constitutionally important for a court to provide assurance that a jury is asking the right question; and given the risks of arbitrariness, inadequate notice, and imposing one State's policies on other States, it is particularly important that States avoid procedure that unnecessarily deprives juries of proper legal guidance. Pp. 5–8.

(c) The Oregon Supreme Court's opinion focused on more than reprehensibility. In rejecting Philip Morris' claim that the Constitution prohibits using punitive damages to punish a defendant for harm to nonparties, it made three statements. The first—that this Court held in *State Farm* only that a jury could not base an award on dissimilar acts of a defendant—was correct, but this Court now explicitly holds that a jury may not punish for harm to others. This Court disagrees with the second statement—that if a jury cannot punish for the conduct, there is no reason to consider it—since the Due Process Clause prohibits a State's inflicting punishment for harm to nonparties, but permits a jury to consider such harm in determining reprehensibility. The third statement—that it is unclear how a jury could consider harm to nonparties and then withhold that consideration from the punishment calculus—raises the practical problem of how to know whether a jury punished the defendant for causing injury to others rather than just took such injury into ac-

Syllabus

count under the rubric of reprehensibility. The answer is that state courts cannot authorize procedures that create an unreasonable and unnecessary risk of any such confusion occurring. Although States have some flexibility in determining what kind of procedures to implement to protect against that risk, federal constitutional law obligates them to provide some form of protection where the risk of misunderstanding is a significant one. Pp. 8–10.

2. Because the Oregon Supreme Court's application of the correct standard may lead to a new trial, or a change in the level of the punitive damages award, this Court will not consider the question whether the award is constitutionally "grossly excessive." P. 10.

340 Ore. 35, 127 P. 3d 1165, vacated and remanded.

BREYER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, SOUTER, and ALITO, JJ., joined. STEVENS, J., and THOMAS, J., filed dissenting opinions. GINSBURG, J., filed a dissenting opinion, in which SCALIA and THOMAS, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 05–1256

PHILIP MORRIS USA, PETITIONER *v.* MAYOLA WILLIAMS, PERSONAL REPRESENTATIVE OF THE ESTATE OF JESSE D. WILLIAMS, DECEASED

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF OREGON

[February 20, 2007]

JUSTICE BREYER delivered the opinion of the Court.

The question we address today concerns a large state-court punitive damages award. We are asked whether the Constitution's Due Process Clause permits a jury to base that award in part upon its desire to *punish* the defendant for harming persons who are not before the court (*e.g.*, victims whom the parties do not represent). We hold that such an award would amount to a taking of "property" from the defendant without due process.

I

This lawsuit arises out of the death of Jesse Williams, a heavy cigarette smoker. Respondent, Williams' widow, represents his estate in this state lawsuit for negligence and deceit against Philip Morris, the manufacturer of Marlboro, the brand that Williams favored. A jury found that Williams' death was caused by smoking; that Williams smoked in significant part because he thought it was safe to do so; and that Philip Morris knowingly and falsely led him to believe that this was so. The jury ultimately

found that Philip Morris was negligent (as was Williams) and that Philip Morris had engaged in deceit. In respect to deceit, the claim at issue here, it awarded compensatory damages of about $821,000 (about $21,000 economic and $800,000 noneconomic) along with $79.5 million in punitive damages.

The trial judge subsequently found the $79.5 million punitive damages award "excessive," see, *e.g.*, *BMW of North America, Inc.* v. *Gore*, 517 U. S. 559 (1996), and reduced it to $32 million. Both sides appealed. The Oregon Court of Appeals rejected Philip Morris' arguments and restored the $79.5 million jury award. Subsequently, Philip Morris sought review in the Oregon Supreme Court (which denied review) and then here. We remanded the case in light of *State Farm Mut. Automobile Ins. Co.* v. *Campbell*, 538 U. S. 408 (2003). 540 U. S. 801 (2003). The Oregon Court of Appeals adhered to its original views. And Philip Morris sought, and this time obtained, review in the Oregon Supreme Court.

Philip Morris then made two arguments relevant here. First, it said that the trial court should have accepted, but did not accept, a proposed "punitive damages" instruction that specified the jury could not seek to punish Philip Morris for injury to other persons not before the court. In particular, Philip Morris pointed out that the plaintiff's attorney had told the jury to "think about how many other Jesse Williams in the last 40 years in the State of Oregon there have been. . . . In Oregon, how many people do we see outside, driving home . . . smoking cigarettes? . . . [C]igarettes . . . are going to kill ten [of every hundred]. [And] the market share of Marlboros [*i.e.*, Philip Morris] is one-third [*i.e.*, one of every three killed]." App. 197a, 199a. In light of this argument, Philip Morris asked the trial court to tell the jury that "you may consider the extent of harm suffered by others in determining what [the] reasonable relationship is" between any punitive award and "the

harm caused to Jesse Williams" by Philip Morris' misconduct, "[but] you are not to punish the defendant for the impact of its alleged misconduct on other persons, who may bring lawsuits of their own in which other juries can resolve their claims . . . ." *Id.,* at 280a. The judge rejected this proposal and instead told the jury that "[p]unitive damages are awarded against a defendant to punish misconduct and to deter misconduct," and "are not intended to compensate the plaintiff or anyone else for damages caused by the defendant's conduct." *Id.,* at 283a. In Philip Morris' view, the result was a significant likelihood that a portion of the $79.5 million award represented punishment for its having harmed others, a punishment that the Due Process Clause would here forbid.

Second, Philip Morris pointed to the roughly 100-to-1 ratio the $79.5 million punitive damages award bears to $821,000 in compensatory damages. Philip Morris noted that this Court in *BMW* emphasized the constitutional need for punitive damages awards to reflect (1) the "reprehensibility" of the defendant's conduct, (2) a "reasonable relationship" to the harm the plaintiff (or related victim) suffered, and (3) the presence (or absence) of "sanctions," *e.g.*, criminal penalties, that state law provided for comparable conduct, 517 U. S., at 575–585. And in *State Farm,* this Court said that the longstanding historical practice of setting punitive damages at two, three, or four times the size of compensatory damages, while "not binding," is "instructive," and that "[s]ingle-digit multipliers are more likely to comport with due process." 538 U. S., at 425. Philip Morris claimed that, in light of this case law, the punitive award was "grossly excessive." See *TXO Production Corp.* v. *Alliance Resources Corp.*, 509 U. S. 443, 458 (1993) (plurality opinion); *BMW*, *supra*, at 574–575; *State Farm*, *supra*, at 416–417.

The Oregon Supreme Court rejected these and other Philip Morris arguments. In particular, it rejected Philip

Morris' claim that the Constitution prohibits a state jury "from using punitive damages to punish a defendant for harm to nonparties." 340 Ore. 35, 51–52, 127 P. 3d 1165, 1175 (2006). And in light of Philip Morris' reprehensible conduct, it found that the $79.5 million award was not "grossly excessive." *Id.,* at 63–64, 127 P. 3d, at 1181–1182.

Philip Morris then sought certiorari. It asked us to consider, among other things, (1) its claim that Oregon had unconstitutionally permitted it to be punished for harming nonparty victims; and (2) whether Oregon had in effect disregarded "the constitutional requirement that punitive damages be reasonably related to the plaintiff's harm." Pet. for Cert. (I). We granted certiorari limited to these two questions.

For reasons we shall set forth, we consider only the first of these questions. We vacate the Oregon Supreme Court's judgment, and we remand the case for further proceedings.

## II

This Court has long made clear that "[p]unitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." *BMW, supra*, at 568. See also *Gertz* v. *Robert Welch, Inc.*, 418 U. S. 323, 350 (1974); *Newport* v. *Fact Concerts, Inc.*, 453 U. S. 247, 266–267 (1981); *Pacific Mut. Life Ins. Co.* v. *Haslip*, 499 U. S. 1, 22 (1991). At the same time, we have emphasized the need to avoid an arbitrary determination of an award's amount. Unless a State insists upon proper standards that will cabin the jury's discretionary authority, its punitive damages system may deprive a defendant of "fair notice . . . of the severity of the penalty that a State may impose," *BMW, supra*, at 574; it may threaten "arbitrary punishments," *i.e.*, punishments that reflect not an "application of law" but "a decisionmaker's caprice," *State Farm*, *supra*, at 416,

418 (internal quotation marks omitted); and, where the amounts are sufficiently large, it may impose one State's (or one jury's) "policy choice," say as to the conditions under which (or even whether) certain products can be sold, upon "neighboring States" with different public policies, *BMW*, *supra*, at 571–572.

For these and similar reasons, this Court has found that the Constitution imposes certain limits, in respect both to procedures for awarding punitive damages and to amounts forbidden as "grossly excessive." See *Honda Motor Co.* v. *Oberg*, 512 U. S. 415, 432 (1994) (requiring judicial review of the size of punitive awards); *Cooper Industries, Inc.* v. *Leatherman Tool Group, Inc.*, 532 U. S. 424, 443 (2001) (review must be *de novo*); *BMW*, *supra*, at 574–585 (excessiveness decision depends upon the reprehensibility of the defendant's conduct, whether the award bears a reasonable relationship to the actual and potential harm caused by the defendant to the plaintiff, and the difference between the award and sanctions "authorized or imposed in comparable cases"); *State Farm*, *supra*, at 425 (excessiveness more likely where ratio exceeds single digits). Because we shall not decide whether the award here at issue is "grossly excessive," we need now only consider the Constitution's procedural limitations.

### III

In our view, the Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties or those whom they directly represent, *i.e.*, injury that it inflicts upon those who are, essentially, strangers to the litigation. For one thing, the Due Process Clause prohibits a State from punishing an individual without first providing that individual with "an opportunity to present every available defense." *Lindsey* v. *Normet*, 405 U. S. 56, 66 (1972) (internal quotation marks omitted). Yet a defen-

dant threatened with punishment for injuring a nonparty victim has no opportunity to defend against the charge, by showing, for example in a case such as this, that the other victim was not entitled to damages because he or she knew that smoking was dangerous or did not rely upon the defendant's statements to the contrary.

For another, to permit punishment for injuring a non-party victim would add a near standardless dimension to the punitive damages equation. How many such victims are there? How seriously were they injured? Under what circumstances did injury occur? The trial will not likely answer such questions as to nonparty victims. The jury will be left to speculate. And the fundamental due process concerns to which our punitive damages cases refer—risks of arbitrariness, uncertainty and lack of notice—will be magnified. *State Farm*, 538 U. S., at 416, 418; *BMW*, 517 U. S., at 574.

Finally, we can find no authority supporting the use of punitive damages awards for the purpose of punishing a defendant for harming others. We have said that it may be appropriate to consider the reasonableness of a punitive damages award in light of the *potential* harm the defendant's conduct could have caused. But we have made clear that the potential harm at issue was harm potentially caused *the plaintiff.* See *State Farm*, *supra*, at 424 ("[W]e have been reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, *to the plaintiff* and the punitive damages award" (emphasis added)). See also *TXO*, 509 U. S., at 460–462 (plurality opinion) (using same kind of comparison as basis for finding a punitive award not unconstitutionally excessive). We did use the term "error-free" (in *BMW*) to describe a lower court punitive damages calculation that likely included harm to others in the equation. 517 U. S., at 568, n. 11. But context makes clear that the term "error-free" in the *BMW* footnote referred to errors relevant to the case

at hand. Although elsewhere in *BMW* we noted that there was no suggestion that the plaintiff "or any other BMW purchaser was threatened with any additional potential harm" by the defendant's conduct, we did not purport to decide the question of harm to others. *Id.,* at 582. Rather, the opinion appears to have left the question open.

Respondent argues that she is free to show harm to other victims because it is relevant to a different part of the punitive damages constitutional equation, namely, reprehensibility. That is to say, harm to others shows more reprehensible conduct. Philip Morris, in turn, does not deny that a plaintiff may show harm to others in order to demonstrate reprehensibility. Nor do we. Evidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible—although counsel may argue in a particular case that conduct resulting in no harm to others nonetheless posed a grave risk to the public, or the converse. Yet for the reasons given above, a jury may not go further than this and use a punitive damages verdict to punish a defendant directly on account of harms it is alleged to have visited on nonparties.

Given the risks of unfairness that we have mentioned, it is constitutionally important for a court to provide assurance that the jury will ask the right question, not the wrong one. And given the risks of arbitrariness, the concern for adequate notice, and the risk that punitive damages awards can, in practice, impose one State's (or one jury's) policies (*e.g.*, banning cigarettes) upon other States—all of which accompany awards that, today, may be many times the size of such awards in the 18th and 19th centuries, see *id.*, at 594–595 (BREYER, J., concurring)—it is particularly important that States avoid procedure that unnecessarily deprives juries of proper legal guidance. We therefore conclude that the Due Process

Clause requires States to provide assurance that juries are not asking the wrong question, *i.e.*, seeking, not simply to determine reprehensibility, but also to punish for harm caused strangers.

## IV

Respondent suggests as well that the Oregon Supreme Court, in essence, agreed with us, that it did not authorize punitive damages awards based upon punishment for harm caused to nonparties. We concede that one might read some portions of the Oregon Supreme Court's opinion as focusing only upon reprehensibility. See, *e.g.*, 340 Ore., at 51, 127 P. 3d, at 1175 ("[T]he jury could consider whether Williams and his misfortune were merely exemplars of the harm that Philip Morris was prepared to inflict on the smoking public at large"). But the Oregon court's opinion elsewhere makes clear that that court held more than these few phrases might suggest.

The instruction that Philip Morris said the trial court should have given distinguishes between using harm to others as part of the "reasonable relationship" equation (which it would allow) and using it directly as a basis for punishment. The instruction asked the trial court to tell the jury that "you *may* consider the extent of harm suffered by others *in determining what [the] reasonable relationship is*" between Philip Morris' punishable misconduct and harm caused to Jesse Williams, "*[but] you are not to punish the defendant for the impact of its alleged misconduct on other persons, who may bring lawsuits of their own* in which other juries can resolve their claims . . . ." App. 280a (emphasis added). And as the Oregon Supreme Court explicitly recognized, Philip Morris argued that the Constitution "prohibits the state, acting through a civil jury, from using punitive damages to punish a defendant for harm to nonparties." 340 Ore., at 51–52, 127 P. 3d, at 1175.

The court rejected that claim. In doing so, it pointed out (1) that this Court in *State Farm* had held only that a jury could not base its award upon "dissimilar" acts of a defendant. 340 Ore., at 52–53, 127 P. 3d, at 1175–1176. It added (2) that "[i]f a jury cannot punish for the conduct, then it is difficult to see why it may consider it at all." *Id.*, at 52, n. 3, 127 P. 3d, at 1175, n. 3. And it stated (3) that "[i]t is unclear to us how a jury could 'consider' harm to others, yet withhold that consideration from the punishment calculus." *Ibid.*

The Oregon court's first statement is correct. We did not previously hold explicitly that a jury may not punish for the harm caused others. But we do so hold now. We do not agree with the Oregon court's second statement. We have explained why we believe the Due Process Clause prohibits a State's inflicting punishment for harm caused strangers to the litigation. At the same time we recognize that conduct that risks harm to many is likely more reprehensible than conduct that risks harm to only a few. And a jury consequently may take this fact into account in determining reprehensibility. Cf., *e.g.*, *Witte* v. *United States*, 515 U. S. 389, 400 (1995) (recidivism statutes taking into account a criminal defendant's other misconduct do not impose an "'additional penalty for the earlier crimes,' but instead . . . 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one'" (quoting *Gryger* v. *Burke*, 334 U. S. 728, 732 (1948))).

The Oregon court's third statement raises a practical problem. How can we know whether a jury, in taking account of harm caused others under the rubric of reprehensibility, also seeks to *punish* the defendant for having caused injury to others? Our answer is that state courts cannot authorize procedures that create an unreasonable and unnecessary risk of any such confusion occurring. In particular, we believe that where the risk of that misun-

derstanding is a significant one—because, for instance, of the sort of evidence that was introduced at trial or the kinds of argument the plaintiff made to the jury—a court, upon request, must protect against that risk.  Although the States have some flexibility to determine what *kind* of procedures they will implement, federal constitutional law obligates them to provide *some* form of protection in appropriate cases.

V

As the preceding discussion makes clear, we believe that the Oregon Supreme Court applied the wrong constitutional standard when considering Philip Morris' appeal. We remand this case so that the Oregon Supreme Court can apply the standard we have set forth.  Because the application of this standard may lead to the need for a new trial, or a change in the level of the punitive damages award, we shall not consider whether the award is constitutionally "grossly excessive."  We vacate the Oregon Supreme Court's judgment and remand the case for further proceedings not inconsistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 05–1256

———————

PHILIP MORRIS USA, PETITIONER *v.* MAYOLA
WILLIAMS, PERSONAL REPRESENTATIVE OF THE
ESTATE OF JESSE D. WILLIAMS,
DECEASED

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF
OREGON

[February 20, 2007]

JUSTICE STEVENS, dissenting.

The Due Process Clause of the Fourteenth Amendment imposes both substantive and procedural constraints on the power of the States to impose punitive damages on tortfeasors. See *State Farm Mut. Automobile Ins. Co.* v. *Campbell*, 538 U. S. 408 (2003); *Cooper Industries, Inc.* v. *Leatherman Tool Group, Inc.*, 532 U. S. 424 (2001); *BMW of North America, Inc.* v. *Gore*, 517 U. S. 559 (1996); *Honda Motor Co.* v. *Oberg*, 512 U. S. 415 (1994); *TXO Production Corp.* v. *Alliance Resources Corp.*, 509 U. S. 443 (1993). I remain firmly convinced that the cases announcing those constraints were correctly decided. In my view the Oregon Supreme Court faithfully applied the reasoning in those opinions to the egregious facts disclosed by this record. I agree with JUSTICE GINSBURG's explanation of why no procedural error even arguably justifying reversal occurred at the trial in this case. See *post*, p. \_\_\_.

Of greater importance to me, however, is the Court's imposition of a novel limit on the State's power to impose punishment in civil litigation. Unlike the Court, I see no reason why an interest in punishing a wrongdoer "for harming persons who are not before the court," *ante,* at 1, should not be taken into consideration when assessing the

appropriate sanction for reprehensible conduct.

Whereas compensatory damages are measured by the harm the defendant has caused the plaintiff, punitive damages are a sanction for the public harm the defendant's conduct has caused or threatened. There is little difference between the justification for a criminal sanction, such as a fine or a term of imprisonment, and an award of punitive damages. See *Cooper Industries*, 532 U. S., at 432. In our early history either type of sanction might have been imposed in litigation prosecuted by a private citizen. See *Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83, 127–128 (1998) (STEVENS, J., concurring in judgment). And while in neither context would the sanction typically include a pecuniary award measured by the harm that the conduct had caused to any third parties, in both contexts the harm to third parties would surely be a relevant factor to consider in evaluating the reprehensibility of the defendant's wrongdoing. We have never held otherwise.

In the case before us, evidence attesting to the possible harm the defendant's extensive deceitful conduct caused other Oregonians was properly presented to the jury. No evidence was offered to establish an appropriate measure of damages to compensate such third parties for their injuries, and no one argued that the punitive damages award would serve any such purpose. To award compensatory damages to remedy such third-party harm might well constitute a taking of property from the defendant without due process, see *ante*, at 1. But a punitive damages award, instead of serving a compensatory purpose, serves the entirely different purposes of retribution and deterrence that underlie every criminal sanction. *State Farm*, 538 U. S., at 416. This justification for punitive damages has even greater salience when, as in this case, see Ore. Rev. Stat. §31.735(1) (2003), the award is payable in whole or in part to the State rather than to the private

litigant.[1]

While apparently recognizing the novelty of its holding, *ante*, at 9, the majority relies on a distinction between taking third-party harm into account in order to assess the reprehensibility of the defendant's conduct—which is permitted—from doing so in order to punish the defendant "directly"—which is forbidden. *Ante*, at 7. This nuance eludes me. When a jury increases a punitive damages award because injuries to third parties enhanced the reprehensibility of the defendant's conduct, the jury is by definition punishing the defendant—directly—for third-party harm.[2] A murderer who kills his victim by throwing a bomb that injures dozens of bystanders should be punished more severely than one who harms no one other than his intended victim. Similarly, there is no reason why the measure of the appropriate punishment for engaging in a campaign of deceit in distributing a poisonous and addictive substance to thousands of cigarette smokers

---

[1] The Court's holding in *Browning-Ferris Industries of Vt., Inc.* v. *Kelco Disposal, Inc.*, 492 U. S. 257 (1989), distinguished, for the purposes of appellate review under the Excessive Fines Clause of the Eighth Amendment, between criminal sanctions and civil fines awarded entirely to the plaintiff. The fact that part of the award in this case is payable to the State lends further support to my conclusion that it should be treated as the functional equivalent of a criminal sanction. See *id.*, at 263–264. I continue to agree with Justice O'Connor and those scholars who have concluded that the Excessive Fines Clause is applicable to punitive damages awards regardless of who receives the ultimate payout. See *id.*, at 286–299 (O'Connor, J., concurring in part and dissenting in part).

[2] It is no answer to refer, as the majority does, to recidivism statutes. *Ante*, at 9. In that context, we have distinguished between taking prior crimes into account as an aggravating factor in penalizing the conduct before the court versus doing so to punish for the earlier crimes. *Ibid.* But if enhancing a penalty for a present crime because of prior conduct that has already been punished is permissible, it is certainly proper to enhance a penalty because the conduct before the court, which has never been punished, injured multiple victims.

statewide should not include consideration of the harm to those "bystanders" as well as the harm to the individual plaintiff.  The Court endorses a contrary conclusion without providing us with any reasoned justification.

It is far too late in the day to argue that the Due Process Clause merely guarantees fair procedure and imposes no substantive limits on a State's lawmaking power.  See, *e.g., Moore* v. *East Cleveland*, 431 U. S. 494, 544 (1977) (White, J., dissenting); *Poe* v. *Ullman*, 367 U. S. 497, 540–541 (1961) (Harlan, J., dissenting); *Whitney* v. *California*, 274 U. S. 357, 373 (1927) (Brandeis, J., concurring).  It remains true, however, that the Court should be "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins* v. *Harker Heights*, 503 U. S. 115, 125 (1992).  Judicial restraint counsels us to "exercise the utmost care whenever we are asked to break new ground in this field." *Ibid.* Today the majority ignores that sound advice when it announces its new rule of substantive law.

Essentially for the reasons stated in the opinion of the Supreme Court of Oregon, I would affirm its judgment.

# SUPREME COURT OF THE UNITED STATES

———————

No. 05–1256

———————

## PHILIP MORRIS USA, PETITIONER *v.* MAYOLA WILLIAMS, PERSONAL REPRESENTATIVE OF THE ESTATE OF JESSE D. WILLIAMS, DECEASED

### ON WRIT OF CERTIORARI TO THE SUPREME COURT OF OREGON

[February 20, 2007]

JUSTICE THOMAS, dissenting.

I join JUSTICE GINSBURG's dissent in full. I write separately to reiterate my view that "'the Constitution does not constrain the size of punitive damages awards.'" *State Farm Mut. Automobile Ins. Co.* v. *Campbell*, 538 U. S. 408, 429–430 (2003) (THOMAS, J., dissenting) (quoting *Cooper Industries, Inc.* v. *Leatherman Tool Group, Inc.*, 532 U. S. 424, 443 (2001) (THOMAS, J., concurring)). It matters not that the Court styles today's holding as "procedural" because the "procedural" rule is simply a confusing implementation of the substantive due process regime this Court has created for punitive damages. See *Pacific Mut. Life Ins. Co.* v. *Haslip*, 499 U. S. 1, 26–27 (1991) (SCALIA, J., concurring in judgment) ("In 1868 . . . punitive damages were undoubtedly an established part of the American common law of torts. It is . . . clear that no particular procedures were deemed necessary to circumscribe a jury's discretion regarding the award of such damages, or their amount"). Today's opinion proves once again that this Court's punitive damages jurisprudence is "insusceptible of principled application." *BMW of North America, Inc.* v. *Gore*, 517 U. S. 559, 599 (1996) (SCALIA, J., joined by THOMAS, J., dissenting).

# SUPREME COURT OF THE UNITED STATES

No. 05–1256

PHILIP MORRIS USA, PETITIONER *v.* MAYOLA
WILLIAMS, PERSONAL REPRESENTATIVE OF THE
ESTATE OF JESSE D. WILLIAMS,
DECEASED

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF
OREGON

[February 20, 2007]

JUSTICE GINSBURG, with whom JUSTICE SCALIA and
JUSTICE THOMAS join, dissenting.

The purpose of punitive damages, it can hardly be de-
nied, is not to compensate, but to punish. Punish for
what? Not for harm actually caused "strangers to the
litigation," *ante*, at 5, the Court states, but for the *repre-
hensibility* of defendant's conduct, *ante*, at 7–8. "[C]onduct
that risks harm to many," the Court observes, "is likely
more reprehensible than conduct that risks harm to only a
few." *Ante*, at 9. The Court thus conveys that, when
punitive damages are at issue, a jury is properly in-
structed to consider the extent of harm suffered by others
as a measure of reprehensibility, but not to mete out
punishment for injuries in fact sustained by nonparties.
*Ante*, at 7–9. The Oregon courts did not rule otherwise.
They have endeavored to follow our decisions, most re-
cently in *BMW of North America, Inc.* v. *Gore*, 517 U. S.
559 (1996), and *State Farm Mut. Automobile Ins. Co.* v.
*Campbell*, 538 U. S. 408 (2003), and have "deprive[d] [no
jury] of proper legal guidance," *ante*, at 7. Vacation of the
Oregon Supreme Court's judgment, I am convinced, is
unwarranted.

The right question regarding reprehensibility, the Court acknowledges, *ante*, at 8*,* would train on "the harm that Philip Morris was prepared to inflict on the smoking public at large." *Ibid.* (quoting 340 Ore. 35, 51, 127 P. 3d 1165, 1175 (2006)). See also 340 Ore., at 55, 127 P. 3d, at 1177 ("[T]he jury, *in assessing the reprehensibility of Philip Morris's actions*, could consider evidence of similar harm to other Oregonians caused (or threatened) by the same conduct." (emphasis added)). The Court identifies no evidence introduced and no charge delivered inconsistent with that inquiry.

The Court's order vacating the Oregon Supreme Court's judgment is all the more inexplicable considering that Philip Morris did not preserve any objection to the charges in fact delivered to the jury, to the evidence introduced at trial, or to opposing counsel's argument. The sole objection Philip Morris preserved was to the trial court's refusal to give defendant's requested charge number 34. See *id.*, at 54, 127 P. 3d, at 1176. The proposed instruction read in pertinent part:

"If you determine that some amount of punitive damages should be imposed on the defendant, it will then be your task to set an amount that is appropriate. This should be such amount as you believe is necessary to achieve the objectives of deterrence and punishment. While there is no set formula to be applied in reaching an appropriate amount, I will now advise you of some of the factors that you may wish to consider in this connection.

"(1) The size of any punishment should bear a reasonable relationship to the harm caused to Jesse Williams by the defendant's punishable misconduct. Although you may consider the extent of harm suffered by others in determining what that reasonable relationship is, you are not to punish the defendant for

the impact of its alleged misconduct on other persons, who may bring lawsuits of their own in which other juries can resolve their claims and award punitive damages for those harms, as such other juries see fit.

.          .          .          .          .

"(2) The size of the punishment may appropriately reflect the degree of reprehensibility of the defendant's conduct—that is, how far the defendant has departed from accepted societal norms of conduct." App. 280a.

Under that charge, just what use could the jury properly make of "the extent of harm suffered by others"? The answer slips from my grasp. A judge seeking to enlighten rather than confuse surely would resist delivering the requested charge.

The Court ventures no opinion on the propriety of the charge proposed by Philip Morris, though Philip Morris preserved no other objection to the trial proceedings. Rather than addressing the one objection Philip Morris properly preserved, the Court reaches outside the bounds of the case as postured when the trial court entered its judgment. I would accord more respectful treatment to the proceedings and dispositions of state courts that sought diligently to adhere to our changing, less than crystalline precedent.

\*          \*          \*

For the reasons stated, and in light of the abundant evidence of "the potential harm [Philip Morris'] conduct could have caused," *ante*, at 6 (emphasis deleted), I would affirm the decision of the Oregon Supreme Court.