## GRYGER *v.* BURKE, WARDEN.

No. 541. Argued April 26–27, 1948.—Decided June 14, 1948.

*Archibald Cox* argued the cause and filed a brief for petitioner.

*Franklin E. Barr* argued the cause for respondent. With him on the brief was *John H. Maurer.*

MR. JUSTICE JACKSON delivered the opinion of the Court.

The Commonwealth of Pennsylvania holds the petitioner prisoner under a life sentence as an habitual criminal. His claim here, protesting denial by the State Supreme Court of his petition for a writ of *habeas corpus,* is that the Federal Constitution requires Pennsylvania to release him on due process of law grounds because (1) he was sentenced as a fourth offender without counsel or offer of counsel; (2) one of the convictions on which the sentence is based occurred before the enactment of the Pennsylvania Habitual Criminal Act [1] and the statute is therefore unconstitutionally retroactive and *ex post facto;* and (3) sentencing under this Act unconstitutionally subjects him to double jeopardy.

At the outset, we face the suggestion that the case cannot properly be decided on the merits by this Court because, as a matter of state law, the attack on the life sentence may be premature since petitioner would be validly restrained on prior sentences not expiring until at least February 1949, even if the life sentence were to be invalidated. Some members of the Court prefer to affirm the judgment on that ground. However, since the state law question is not free from difficulty, the issue was not fully litigated in this Court, and since, on the merits,[2] the same conclusion is reached, we dispose of the case in that manner.

---

[1] § 1108 of the Penal Code of 1939, 18 Pa. Stat. Ann. § 5108.

[2] Respondent contested the case below and in this Court on the merits. We assume that the Supreme Court of Pennsylvania passed

Beginning in 1927, at the age of seventeen, this petitioner has been arrested eight times for crimes of violence, followed in each instance by plea of guilty or by conviction. Respondent states, and petitioner does not deny, that of the last 20 years of his life, over 13 years have been spent in jail. A schedule of his pleas or convictions and pertinent data is appended, *post,* p. 732, those in italics being the four on the basis of which an information was filed charging him to be a fourth offender. Brought into court on that limited charge, he acknowledged his identity as the convict in each of the previous cases and he was given a life sentence pursuant to the Act. He was without counsel and it is said that he was neither advised of his right to obtain counsel nor was counsel offered to him.[3]

It rather overstrains our credulity to believe that one who had been a defendant eight times and for whom counsel had twice waged defenses, albeit unsuccessful ones, did not know of his right to engage counsel. No request to do so appears. The only question of fact before the court on the fourth offender charge was whether he was the same person who was convicted in the four cases. This he then admitted and does not now deny. The only other question was sentence, and it does not appear that any information helpful to petitioner was unknown to the court.

---

on petitioner's allegations of deprivation of federal constitutional rights and that those issues are therefore open here. *Herndon* v. *Lowry,* 301 U. S. 242, 247.

[3] The Supreme Court of Pennsylvania has frequently held that the state constitutional provision according defendants the right to be heard by counsel does not require appointment of counsel in non-capital cases. See, for example, *Commonwealth ex rel. McGlinn* v. *Smith,* 344 Pa. 41, 24 A. 2d 1; *Commonwealth ex rel. Withers* v. *Ashe,* 350 Pa. 493, 39 A. 2d 610. See also *Betts* v. *Brady,* 316 U. S. 455, 465. The Pennsylvania statutes require only that destitute defendants accused of murder shall be assigned counsel. Act of March 22, 1907, 19 Pa. Stat. Ann. § 784.

It is said that the sentencing judge prejudiced the defendant by a mistake in construing the Pennsylvania Habitual Criminal Act in that he regarded as mandatory a sentence which is discretionary. It is neither clear that the sentencing court so construed the statute, nor if he did that we are empowered to pronounce it an error of Pennsylvania law. It is clear that the trial court, in view of defendant's long criminal record, considered he had a duty to impose the life sentence and referred to it as one "required by the Act." But there is nothing to indicate that he felt constrained to impose the penalty except as the facts before him warranted it. And it in any event is for the Pennsylvania courts to say under its law what duty or discretion the court may have had. Nothing in the record impeaches the fairness and temperateness with which the trial judge approached his task. His action has been affirmed by the highest court of the Commonwealth. We are not at liberty to conjecture that the trial court acted under an interpretation of the state law different from that which we might adopt and then set up our own interpretation as a basis for declaring that due process has been denied. We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.

We have just considered at length the obligation of the States to provide counsel to defendants who plead guilty to non-capital offenses. *Bute* v. *Illinois,* 333 U. S. 640. Notwithstanding the resourceful argument of assigned counsel in this Court, we think that precedent settles the issue here, that no exceptional circumstances are present and that, under the circumstances disclosed by the record before us, the State's failure to provide counsel for this petitioner on his plea to the fourth offender charge did not render his conviction and sentence invalid.

Nor do we think the fact that one of the convictions that entered into the calculations by which petitioner became a fourth offender occurred before the Act was passed, makes the Act invalidly retroactive or subjects the petitioner to double jeopardy. The sentence as a fourth offender or habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one. Cf. *Moore* v. *Missouri,* 159 U. S. 673; *McDonald* v. *Massachusetts,* 180 U. S. 311; *Graham* v. *West Virginia,* 224 U. S. 616; *Carlesi* v. *New York,* 233 U. S. 51; *Pennsylvania ex rel. Sullivan* v. *Ashe,* 302 U. S. 51.

The judgment is

*Affirmed.*

Table of Pleas and Convictions.

| Date | Charge | Plea | Sentence |
|---|---|---|---|
| *1927* | *Burglary* | *Guilty* | *1 year.* |
| 1928 | Assault and battery; carrying concealed deadly weapon. | Guilty | 1 year. |
| *1929* | *Burglary; breaking and entering with intent to commit a felony.* | *Not guilty* | *Committed to Reformatory indefinitely.* |
| *1930* | *Armed robbery, armed assault, entering with intent to rob.* | *Guilty* | *5 to 10 years.* |
| 1937 | Burglary, carrying concealed deadly weapon. | Guilty of receiving stolen goods, and carrying concealed deadly weapon. | 1½ to 3 years. |
| 1943 | Burglary, receiving stolen goods—12 offenses each. | Guilty of receiving stolen goods. | 5 to 10 years. |
| *1944* | *Burglary* | *Not guilty* | *5 to 10 years.* |
| 1944 | Aggravated assault and battery. | Not guilty | Suspended. |

MR. JUSTICE RUTLEDGE, with whom MR. JUSTICE BLACK, MR. JUSTICE DOUGLAS and MR. JUSTICE MURPHY join, dissenting.

Even upon the narrow view to which a majority of this Court adhere concerning the scope of the right to counsel

in criminal cases, as guaranteed by the Fourteenth Amendment's requirement of due process of law, I cannot square the decision in this case with that made in *Townsend* v. *Burke, post,* p. 736, decided today.

The opinion in that case declares that "the disadvantage from absence of counsel, when aggravated by circumstances showing that it resulted in the prisoner actually being taken advantage of, or prejudiced, does make out a case of violation of due process." In this view the Court finds that Townsend was prejudiced by the trial court's action in sentencing him on the basis either of misinformation submitted to it concerning his prior criminal record or by its misreading of the record and carelessness in that respect. On the same basis Gryger's sentence was invalid, although the Court finds no such exceptional circumstances here inducing prejudice as it finds in Townsend's case.

The record, in my judgment, does reveal such a circumstance, one working to induce prejudice at exactly the same point as with Townsend, namely, upon the critical question of sentence. So far as the record reveals, Gryger was sentenced to life imprisonment by a court working under the misconception that a life term was mandatory, not discretionary, under the Pennsylvania Habitual Criminal Act.[1]

Exactly the opposite is true. In explicit terms the statute puts imposition of life imprisonment upon fourth offenders "in the discretion of the judge." [2] Moreover,

---

[1] Pa. Stat. Ann. tit. 18, § 5108.

[2] Section 5108 (b) provides that when the prior convictions are shown at the trial for the fourth offense, the defendant "shall, upon conviction . . . be sentenced, in the discretion of the judge trying the case, to imprisonment in a state penitentiary for the term of his natural life."

Section 5108 (d), which authorizes the procedure followed in the instant case, *viz,* a separate proceeding on an information within

appeal of the sentence is authorized "not only as to alleged legal errors but also as to the justice thereof," with the costs of appeal and reasonable counsel fee to be paid by the Commonwealth.[3]

In spite of his discretion and duty to exercise it, the sentencing judge, remarking that the only question was whether petitioner was the same person who had suffered the prior convictions, repeatedly spoke as if the life sentence were mandatory. The statements quoted in the margin are typical.[4]

It is immaterial that the same sentence might or probably would have been imposed in an exercise of the court's discretion. Petitioner was entitled to have sentence pronounced in that manner, not as an automatic mandate of statute. The denial of the very essence of the judicial process, which is the exercise of discretion where discretion is required, is in itself a denial of due process, not merely an error of state law of no concern to this Court. And we cannot speculate whether the same sentence would have been pronounced if the court's discretion had been exercised.

Moreover, the court's misconception, together with the absence of counsel, deprived the petitioner of any chance

---

two years of the fourth conviction, provides that "the court may sentence him to imprisonment for life as prescribed in clause (b) of this section . . . ."

That the statute vests discretion in the sentencing judge has been clearly recognized by the Commonwealth's highest court. *Commonwealth ex rel. Foster* v. *Ashe*, 336 Pa. 238, 240.

[3] § 5108 (d).

[4] ". . . it becomes my duty, under the Act of Assembly, to treat such a case, that is to say, where a person has been found guilty the fourth time of a felony within a prescribed period, to impose the sentence required by the Act."

"In other words, the law has come to this viewpoint: . . . [a fourth offender] must be removed from the possibility of ever committing the offense again."

to be heard on the crucial question of sentence, the only matter left for hearing and the vital one after his plea of guilty was received. Even if it could be assumed, as the Court says, that he knew of his right to counsel from his frequent prior appearances in court,[5] still it cannot be assumed, indeed the record substantially disproves, that he knew the exact terms of the Habitual Criminal Act.[6] He therefore, misled it would seem by the court's language giving no hint of its discretionary power, made no plea in mitigation and had no representative to correct the court's misconception or to present considerations which might have induced a sentence less severe than the one pronounced. To paraphrase the concluding sentence of the opinion in the *Townsend* case, "Counsel might not have changed the sentence, but he could have taken steps to

---

[5] A dubious assumption, it would seem, in view of the fact that Pennsylvania generally confines the right to have counsel in criminal trials to capital cases. See, *e. g., Commonwealth ex rel. McGlinn* v. *Smith*, 344 Pa. 41; *Commonwealth ex rel. Withers* v. *Ashe*, 350 Pa. 493. Pa. Stat. Ann. tit. 19, § 784. But cf. note 3 and text.

[6] Petitioner, when served with the information charging him as a fourth offender, was confined in the penitentiary without financial means of preparing a defense. He alleged, without contradiction, that the prison authorities refused his request for a copy of the Habitual Criminal Act. It is no answer, of course, to say that petitioner had no need of the statute or other assistance because of his previous trips through the courts. Whatever knowledge of court procedures he may have acquired, he was unfamiliar with the fourth offender act.

Even if petitioner had secured access prior to the hearing to materials needed to prepare a defense, or had been adequately informed by the court as to the statute's terms and his rights thereunder, it is highly unrealistic to assume that petitioner was capable of adequately presenting his own case at the hearing. The pleadings which he filed are telling witness of his limited intelligence and education. And at the hearing it was so obvious that petitioner was unable to comprehend the issues involved that the assistant district attorney representing the Commonwealth remarked, "He doesn't understand."

see that the sentence was not predicated on misconception or misreading of the controlling statute, a requirement of fair play which absence of counsel withheld from this prisoner."

I find it difficult to comprehend that the court's misreading or misinformation concerning the facts of record vital to the proper exercise of the sentencing function is prejudicial and deprives the defendant of due process of law, but its misreading or misconception of the controlling statute, in a matter so vital as imposing mandatory sentence or exercising discretion concerning it, has no such effect. Perhaps the difference serves only to illustrate how capricious are the results when the right to counsel is made to depend not upon the mandate of the Constitution, but upon the vagaries of whether judges, the same or different, will regard this incident or that in the course of particular criminal proceedings as prejudicial.