2015 CO 34

**The PEOPLE of the State of Colorado, Petitioner**

**v.**

**Reginald Marcus PORTER, Respondent**

**Supreme Court Case No. 13SC838**

Supreme Court of Colorado.

May 26, 2015

Attorneys for Petitioner: Peter A. Weir, District Attorney, First Judicial District, Donna Skinner Reed, Chief Appellate Deputy District Attorney, Golden, Colorado

Attorney for Respondent: Robert P. Borquez Denver, Colorado

JUSTICE HOOD delivered the Opinion of the Court.

¶1 We granted certiorari in this case to resolve a split of authority between divisions of the court of appeals regarding the following issue: Does double jeopardy bar a new habitual criminal sentencing hearing when the trial court erroneously dismisses the habitual counts before the prosecution presents any evidence as to those counts?

¶2 The habitual criminal statute creates two separate phases of trial—one on the substantive counts (for which a defendant may request a jury), and one concerning habitual criminality (over which a judge must preside). In the case at hand, the court of appeals relied on our holding in *People v. Quintana*, 634 P.2d 413 (Colo.1981), to conclude that jeopardy attached during the substantive phase of the defendant's trial and carried through the habitual phase. It therefore held that jeopardy precluded the trial court from adjudicating the defendant's habitual counts on remand. We now reverse that portion of the court of appeals' opinion.

¶3 Since we decided *Quintana*, the United States Supreme Court has held that federal constitutional double jeopardy protections do not apply to habitual criminal proceedings. *See Monge v. California*, 524 U.S. 721, 734, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998). This case invites us to assess the continued vitality of *Quintana*. After carefully examining state and federal precedent following the Supreme Court's pronouncement in *Monge*, we conclude that circumstances have changed such that we should revisit—and overrule—*Quintana*.

¶4 We hold that Colorado double jeopardy law does not apply to noncapital sentencing proceedings. Accordingly, double jeopardy does not bar trial of the defendant's habitual counts in this case.

## I. Facts and Procedural History

¶5 In 2002, Reginald Marcus Porter robbed and attempted to sexually assault a casino worker. He then tried to evade capture during a police chase. Based on these events, the prosecution charged Porter with two counts of first degree burglary and one count each of aggravated motor vehicle theft, attempted sexual assault, aggravated robbery, vehicular eluding, and third degree assault. The prosecution later added habitual counts. A jury found Porter guilty of all the substantive charges. The trial court adjudicated him a habitual offender. Porter appealed, and the court of appeals reversed the convictions, for reasons irrelevant now, and remanded for a new trial on all counts.

¶6 At his second trial, Porter waived his right to a jury, and the court found him guilty of most of the substantive charges.[1] Before the habitual phase, Porter moved to dismiss the habitual counts because he claimed the convictions on which they were predicated had been entered without jurisdiction. Specifically, Porter contended that the predicate convictions followed the improper transfer of those cases from the juvenile court to the district court. The trial court agreed and dismissed the habitual counts, without taking any evidence as to those counts. The prosecution appealed.

¶7 The court of appeals concluded, in pertinent part, that Colorado double jeopardy law precluded a new habitual criminal sentencing hearing.[2] The court relied on our decision in *Quintana* in holding that "jeopardy attached for Porter's habitual criminal counts" "when the first prosecution witness was sworn in at his bench trial." *People v. Porter*, 2013 COA 130, ¶42, —— P.3d ——. In doing so, the court of appeals distinguished, and disagreed with, another division's published opinion in *People v. Barnum*, 217 P.3d 908 (Colo.App.2009). *Porter*, ¶38. We now resolve this split of authority.

1. The court found Porter guilty of first degree burglary, aggravated robbery, attempted sexual assault, and vehicular eluding.

2. Because the issue was not raised in the petition for certiorari, and Porter did not cross-petition, we assume without deciding that the court of appeals was correct in holding that the doctrine of collateral estoppel barred Porter from relitigating whether his prior convictions were entered without jurisdiction because the cases from which those convictions flowed were not properly transferred from the juvenile court.

## II. Analysis

### A. Standard of Review

■ ¶ 8 We review this question of law de novo. *See People v. Melillo*, 25 P.3d 769, 777 (Colo.2001).

### B. Double Jeopardy Law

■ ¶ 9 Under the Double Jeopardy Clauses of the United States and Colorado Constitutions, the State cannot punish a person for the same offense twice. U.S. Const. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb...."); [3] Colo. Const. art. 2, § 18 ("No person shall ... be twice put in jeopardy for the same offense."). This constitutional guarantee prevents both a second prosecution for the same offense after acquittal or conviction and multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). For a defendant to show a violation of his constitutional right to be free from double jeopardy, jeopardy must have attached at the first proceeding, that proceeding must have concluded, and the defendant must have been exposed to a second, or double, jeopardy. *See, e.g., People v. Serravo*, 823 P.2d 128, 141–42 (Colo.1992); *People v. Paulsen*, 198 Colo. 458, 601 P.2d 634, 636 (Colo.1979). Jeopardy attaches when the jury is sworn during a jury trial, when the first prosecution witness is sworn during a bench trial, or when the court has accepted a guilty plea. *See* § 18-1-301(1), C.R.S. (2014); *Jeffrey v. Dist. Court*, 626 P.2d 631, 636 (Colo.1981).

¶ 10 Historically, the United States Supreme Court has "resisted attempts" to extend double jeopardy protections to sentencing proceedings. *Bullington v. Missouri*, 451 U.S. 430, 438, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). The Court has reasoned that "[t]he imposition of a particular sentence usually is not regarded as an 'acquittal' of any more severe sentence that could have been imposed." *Id.*; *see also Nichols v. United States*, 511 U.S. 738, 747, 114 S.Ct.

1921, 128 L.Ed.2d 745 (1994) (explaining that repeat-offender laws "penaliz[e] only the last offense committed by the defendant" (internal quotation marks omitted)). Rather than viewing an enhanced penalty for recidivism "as either a new jeopardy or additional penalty for the earlier crimes," the Court has explained that it is only "a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." *Gryger v. Burke*, 334 U.S. 728, 732, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948).

¶ 11 Despite this, the Court held in *Bullington* that double jeopardy prohibited the trial court from sentencing a defendant to death when the defendant had originally been sentenced to life imprisonment under a state's bifurcated guilt and penalty proceedings. *Bullington*, 451 U.S. at 446, 101 S.Ct. 1852. It reasoned that "[t]he presentence hearing resembled and, indeed, in all relevant respects was like the immediately preceding trial on the issue of guilt or innocence." *Id.* at 438, 101 S.Ct. 1852. "It was itself a trial on the issue of punishment so precisely defined by the [state's sentencing] statutes." *Id.* Unlike the previous cases the Court had considered where the sentence was subject to great discretion, this had "the hallmarks of the trial on guilt or innocence." *Id.* at 439, 101 S.Ct. 1852.

### C. Quintana

¶ 12 In *Quintana*, we relied on this reasoning from *Bullington* to address whether a "defendant may be retried on habitual criminality consistent with the double jeopardy clauses of the United States and Colorado Constitutions." 634 P.2d at 417. Like the Supreme Court in *Bullington*, we acknowledged that double jeopardy protections have not historically been applied to sentencing decisions after retrial in the same way they have to second prosecutions for the underlying offense. *Id.* at 418. But we noted that the Court had distinguished the sentencing proceeding in *Bullington* because, there, the defendant's sentencing proceeding was " 'like the trial on the question of guilt or inno-

---

**3.** The Double Jeopardy Clause found in the Fifth Amendment is applicable to the states through the Due Process Clause of the Fourteenth

Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

cence.'" *Id.* at 419 (quoting *Bullington,* 451 U.S. at 446, 101 S.Ct. 1852). Relying on this distinction, we concluded that, analogous to the statutory scheme at issue in *Bullington,* "[i]n Colorado the trial of habitual criminal charges stands in marked contrast to the ordinary sentencing hearing." *Id.* We explained that "[t]he bifurcated trial and separate verdict provisions are further manifestations of legislative intent to require that an adjudication of habitual criminality be made only in accordance with the same procedural and constitutional safeguards traditionally associated with a trial on guilt or innocence." *Id.* Thus, we held that "the constitutional protection against double jeopardy applies to a defendant prosecuted as an habitual criminal." *Id.* We relied heavily on the statutory scheme in reaching this conclusion. *Id.* at 418 (explaining the statutory scheme was "essential to our resolution of this question").

### D. Evolution of the Habitual Criminal Statute

¶ 13 When we decided *Quintana,* a defendant had a statutory right to have a jury decide habitual criminality as part of a single, bifurcated trial. *See* § 16–13–103(4), C.R.S. (1973) (repealed by 2002 Colo. Sess. Laws 1428–29, ch. 318, sec. 3, § 18–1.3–802). The governing statute provided: "[T]he jury impaneled to try the substantive offense shall determine by separate verdict whether the defendant has been convicted as alleged." *Id.* Because both phases were conducted "before the same jury in one continuous proceeding," we concluded that jeopardy attached when the jury swore an oath to determine the facts as to both the substantive and habitual counts. *Quintana,* 634 P.2d at 418.

¶ 14 We later addressed the statute in *People v. Chavez,* 621 P.2d 1362 (Colo.1981) (plurality opinion). There, a plurality of the court concluded that even where a defendant testifies during the substantive phase of the trial and prior-convictions evidence is used to impeach his credibility, the prosecution must still prove those convictions beyond a reasonable doubt with evidence independent of the defendant's testimony. *Id.* at 1367; *see also People ex. rel. Faulk v. Dist. Court,* 673 P.2d

998, 1001–02 (Colo.1983) (discussing history of changes to the habitual criminal statute). A majority acknowledged the benefit of bifurcation with two justices emphasizing that "fundamental fairness requires no less than strict bifurcation." *Chavez,* 621 P.2d at 1370 (Quinn, J., concurring and specially concurring). In the wake of *Chavez,* that same year, the legislature amended section 16–13–103 to require a "separate sentencing hearing" in a bifurcated proceeding, as well as separate jury verdicts. *See* 1981 Colo. Sess. Laws 952–53, ch. 202, sec. 1, § 16–13–103, C.R.S. (1978 Repl.Vol.). We later upheld the constitutionality of this bifurcated proceeding before the same jury. *People ex rel. Faulk,* 673 P.2d at 1003.

¶ 15 In 1995, the legislature once again amended the habitual criminal statute to require that the trial court serve as the factfinder during the habitual phase. *See* 1995 Colo. Sess. Laws 467–68, ch. 129, sec. 14, § 16–13–103, C.R.S. (1986 Repl.Vol.). Colorado law now states that "the trial judge ... shall determine by separate hearing and verdict whether the defendant has been convicted as alleged." § 18–1.3–803(4), C.R.S. (2014). We have not addressed the applicability of double jeopardy principles to the habitual phase of a bifurcated trial since this amendment.

### E. *Monge*

¶ 16 Since we decided *Quintana,* the Supreme Court has made clear that federal double jeopardy law does not extend to sentencing proceedings that result in enhancements for "persistent" offenders, strictly limiting its holding in *Bullington* to death penalty cases. *Monge,* 524 U.S. at 727–28, 118 S.Ct. 2246. *Monge* analyzed the applicability of double jeopardy protections to sentencing proceedings under California's so-called "three-strikes" law. After the defendant in *Monge* had been convicted, the trial court judge enhanced his sentence based on prior convictions and prison terms. *Id.* at 725, 118 S.Ct. 2246. The California Court of Appeal ruled that the evidence had been insufficient to trigger the sentence enhancement and a remand for retrial on the issue of sentence enhancement would violate

double jeopardy principles. *Id.* at 725–26, 118 S.Ct. 2246. The California Supreme Court reversed, reasoning:

> The [habitual criminality phase of a] trial is not a prosecution of an additional criminal offense carrying the stigma associated with a criminal charge; rather it is merely a determination, for purposes of punishment, of the defendant's *status*, which, like age or gender, is readily determinable from the public record. Moreover, when, as here, the court has bifurcated the prior conviction issue, the defendant begins the prior conviction trial having already suffered the embarrassment of the present conviction. The marginal increase in embarrassment attributable to the prior conviction trial is not comparable to the embarrassment of an unproved criminal charge.

*People v. Monge*, 16 Cal.4th 826, 66 Cal. Rptr.2d 853, 941 P.2d 1121, 1129 (1997), *aff'd sub nom. Monge v. California*, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998) (emphasis in original). When the prosecution merely presents evidence from the record of the prior conviction, the California Supreme Court observed, "the defendant does not need to sit for weeks or months while witnesses describe in detail to a jury and the public the specifics of his alleged unlawful activities." *Id.*

¶ 17 The United States Supreme Court agreed. It explained that its rationale in *Bullington* was limited to the "unique circumstances of a capital sentencing proceeding" given "*both* the trial-like proceedings at issue and the severity of the penalty at stake." *Monge*, 524 U.S. at 732–33, 118 S.Ct. 2246 (emphasis in original) (internal quotation marks omitted). While the trial-like features of the capital sentencing context were important in *Bullington*, the Court explained

in *Monge* that any trial-like attributes present in noncapital sentencing proceedings are "a matter of legislative grace, not constitutional command." *Id.* at 734, 118 S.Ct. 2246. The Court concluded that if it were to extend double jeopardy protections to noncapital sentencing hearings, it "might create disincentives that would diminish these important procedural protections." *Id.*[4]

¶ 18 Bound by our precedent in *Quintana*, the court of appeals has grappled with the Supreme Court's holding in *Monge* by concluding that while federal constitutional protections do not extend to habitual criminal proceedings, the double jeopardy protections found in the Colorado Constitution do. *See, e.g., Porter,* ¶ 30; *People v. Valencia*, 169 P.3d 212, 222 (Colo.App.2007) (citing *Monge*, 524 U.S. at 727–28, 118 S.Ct. 2246; *Quintana*, 634 P.2d at 419). Another division avoided the issue by relying on the changes to the habitual criminal statute. *Barnum*, 217 P.3d at 911. This is the first time that we have addressed *Monge's* effect on *Quintana*.

#### F. *Barnum* and *Porter*

¶ 19 When the court of appeals first addressed this issue in *Barnum*, it did not confront the import of *Monge*. *Id.* Instead, it understandably focused on *Quintana* and the legislature's changes to the habitual criminal statute since *Quintana*. *Id.* In *Barnum*, a jury found the defendant guilty of the substantive charges. *Id.* Before the trial court took any witness testimony during the habitual phase, the defendant moved to dismiss those charges because they did not allege specific dates of the prior offenses. *Id.* The trial court granted the motion, and the prosecution moved for reconsideration. *Id.* After granting the motion for reconsideration, the trial court denied the defendant's motion to dismiss the counts, recommenced

---

4. Some debate exists as to the effect of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), on *Monge. See United States v. Blanton*, 476 F.3d 767, 772 (9th Cir.2007) (noting *Apprendi* undermined *Monge* ). In *Apprendi*, the Court largely adopted the *Monge* dissent's position. *Compare Apprendi*, 530 U.S. at 488–89 nn.14–15, 120 S.Ct. 2348, *with Monge*, 524 U.S. at 740, 118 S.Ct. 2246 (Scalia, J., dissenting). But the Court discussed *Monge* in *Apprendi* without questioning its continued viability

and exempted "the fact of a prior conviction" from its holding. *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348; *see also Dretke v. Haley*, 541 U.S. 386, 396, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004) (citing *Monge* for the rule that double jeopardy does not apply to "retrial on a prior conviction used to support recidivist enhancement"). Thus, we conclude *Monge* "remains good law." *York v. State*, 342 S.W.3d 528, 560 (Tex.Crim.App. 2011).

the hearing, and adjudicated the defendant as a habitual criminal. *Id.*

¶ 20 On appeal, the defendant argued that the trial court could not reinstate the habitual counts because jeopardy had already attached when the jury was sworn during his substantive trial. *Id.* The court of appeals disagreed, concluding that the defendant's reliance on *Quintana* was misplaced. *Id.* It addressed the statutory change, distinguished *Quintana,* and held that jeopardy does not attach until the first prosecution witness is sworn in the habitual phase. *Id.* Because the trial court had dismissed the charges before any witnesses had been sworn in the habitual phase, the court of appeals concluded that "jeopardy had not yet attached" and the trial court could reinstate the habitual criminal charges against the defendant without violating his constitutional right against double jeopardy. *Id.; accord Valencia,* 169 P.3d at 222–23 (assuming jeopardy attached during habitual phase when the court "admitted the one exhibit into evidence," but ultimately holding that the trial court did not violate the prohibition against double jeopardy because granting a "continuance did not effect a termination of the proceeding and thus expose defendant to double jeopardy upon the resumption of the proceeding").

¶ 21 In the case before us, the court of appeals was "not persuaded by the *Barnum* division's basis for distinguishing *Quintana.*" *Porter,* ¶ 38. It found the procedures, both before and after the statutory change, "remarkably similar," noting that "[t]he only real distinction is the designated fact finder." *Id.* As a result, the division relied on *Quintana* and concluded that jeopardy attached when the first prosecution witness was sworn during Porter's substantive bench trial.

¶ 22 We now resolve this split. We agree with the division in *Porter* that the statutory changes do not allow us to persuasively distinguish *Quintana.* Instead, we choose to overrule *Quintana,* based on the Supreme Court's subsequent decision in *Monge* and the many court decisions tracking *Monge.*

## G. Stare Decisis

 ¶ 23 In overruling *Quintana,* we must consider stare decisis. The doctrine of stare decisis requires that we follow preexisting rules of law. *See People v. Blehm,* 983 P.2d 779, 788 (Colo.1999). It is a "judge-made doctrine that promotes uniformity, certainty, and stability of the law." *People v. LaRosa,* 2013 CO 2, ¶ 28, 293 P.3d 567, 574. Absent "sound reason for rejecting it," we adhere to the doctrine. *Blehm,* 983 P.2d at 788 (internal quotation marks omitted); *see also Creacy v. Indus. Comm'n,* 148 Colo. 429, 366 P.2d 384, 386 (1961) ("Under the doctrine of stare decisis courts are very reluctant to undo settled law."). But the rule is not so rigid as to prevent us from reevaluating our precedent. Where we are convinced that the precedent was originally erroneous or is no longer sound given changed conditions, and more good than harm will come from departing from it, we will depart from stare decisis.

## H. Application

 ¶ 24 In this case, we perceive no sound reason for maintaining our prior rule in light of the trend in national authority holding to the contrary.[5] Simply put, cir-

---

5. *See, e.g., State v. Collins,* 985 So.2d 985, 993 (Fla.2008) (holding, based on the rationale of *Monge,* Florida's "Double Jeopardy Clause does not preclude granting the State a second opportunity to demonstrate that [the defendant] meets the criteria for habitualization"); *Adams v. State,* 287 Ga. 513, 696 S.E.2d 676, 681 (2010) (relying on *Monge* for the principle that double jeopardy protections do not apply in a sentencing context); *Jaramillo v. State,* 823 N.E.2d 1187, 1188–90 (Ind.2005) (overruling prior cases holding that double jeopardy bars retrial of habitual offender enhancements in light of *Monge* ); *State v. Nelson,* 262 Neb. 896, 636 N.W.2d 620, 627–28 (2001) (rejecting the argument that the Nebraska Constitution affords greater protection than its

federal counterpart and applying "the rationale of *Monge*" to the state's habitual criminal enhancement proceedings); *Hudson v. Warden,* 117 Nev. 387, 22 P.3d 1154, 1163 & n.18 (2001) (holding, based on *Monge,* that "the State is not prohibited from introducing evidence of the prior convictions at re-sentencing"); *State v. McLellan,* 149 N.H. 237, 817 A.2d 309, 314 (2003) ("While we recognize that we have found New Hampshire's Double Jeopardy Clause to provide greater protection than its federal counterpart in certain circumstances, we are not persuaded that we should interpret the State Constitution differently than the Federal Constitution in this context." (citation omitted)); *Commonwealth v. Wil-*

cumstances have changed since we decided *Quintana*.

¶ 25 We first examine whether our holding accomplishes the purpose of protecting a defendant from exposure to double jeopardy—namely, shielding the accused from the risk of being punished for the same offense twice. If the prohibition against a second prosecution following acquittal or conviction guards the accused from "continued embarrassment, anxiety, and expense," *Ohio v. Johnson*, 467 U.S. 493, 498–99, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984), we must ask whether that purpose is served here.

¶ 26 Both article II, section 18 of the Colorado Constitution and its federal counterpart turn on the use of the word "offense." But "the habitual-criminal statute describes a *status rather than a substantive offense*." *People ex rel. Faulk*, 673 P.2d at 1000 (emphasis added) (citing *Maestas v. Dist. Court*, 189 Colo. 443, 541 P.2d 889 (1975)). Generally, "[e]nhancement statutes, whether in the nature of criminal history provisions ... or recidivist statutes that are commonplace in state criminal laws, do not change the penalty imposed for the earlier conviction." *Nichols*, 511 U.S. at 747, 114 S.Ct. 1921; *see also Badelle v. State*, 434 N.E.2d 872, 876 (Ind. 1982) ("[T]he status of an habitual offender is not an offense or crime in itself but is a circumstance the existence of which, if found by the jury, calls for enhancement of the sentence for the last crime charged."). Thus, enhancing a penalty based on prior convictions does not put the defendant in jeopardy for an "offense." Nor does it punish the defendant a second time for the previous offense. Instead, it increases the sentence based on "the manner in which [the defendant] committed the crime of conviction." *Monge*, 524 U.S. at 728, 118 S.Ct. 2246 (alteration in original) (quoting *United States v. Watts*, 519 U.S. 148, 154, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (per curiam)).

¶ 27 Further, the habitual criminality phase simply does not generate the same concerns that drive protecting a defendant against double jeopardy at the substantive trial. We agree with the California Supreme Court's reasoning: continued embarrassment and expense are not as much of a concern in habituality proceedings, as the prosecution is only required to present evidence of prior convictions. *See Monge*, 66 Cal.Rptr.2d 853, 941 P.2d at 1129.

¶ 28 In addition, a sentencing decision favorable to the defendant, or a dismissal on procedural grounds, is not analogous to an acquittal. As the United States Supreme Court explained, when the prosecution fails to proffer evidence of prior convictions in a sentencing proceeding, the analogy to an acquittal is "inapt." *Monge*, 524 U.S. at 729, 118 S.Ct. 2246. "The pronouncement of sentence simply does not have the qualities of constitutional finality that attend an acquittal." *Id.* (internal quotation marks omitted); *see also Bullington*, 451 U.S. at 438, 101 S.Ct. 1852 ("The imposition of a particular sentence usually is not regarded as an 'acquittal' of any more severe sentence that could have been imposed."); *Collins*, 985 So.2d at 993 ("A second attempt to prove the criteria for an enhanced sentence [for recidivism] does not equate to a second prosecution for the same offense after acquittal." (internal quotation marks omitted)).

¶ 29 For the foregoing reasons, we conclude that more good than harm will come from departing from *Quintana*. To be sure, we do not cede control of the interpretation of our state constitution to the Supreme Court; we are free to interpret the protections afforded by the Colorado Constitution more broadly than the United States Constitution and have done so on several occasions. *See, e.g., People v. Young*, 814 P.2d 834, 842–43 (Colo.1991) (collecting cases), *superseded by statute on other grounds as stated in*

son, 594 Pa. 106, 934 A.2d 1191, 1197 n.6 (2007) (holding double jeopardy protections did not prevent the State from presenting evidence of youth/school sentencing enhancement where the original sentence was overturned on appeal); *State v. Washington*, 338 S.C. 392, 526 S.E.2d 709, 711 (2000) (concluding prior convictions may enhance the defendant's sentence without offending

double jeopardy based on *Monge*); *Ex parte Watkins*, 73 S.W.3d 264, 271 n.29 (Tex.Crim.App. 2002) (collecting cases from various courts in Texas that have followed *Monge*); *State v. Eggleston*, 164 Wash.2d 61, 187 P.3d 233, 237 (2008) (holding that, under *Monge*, double jeopardy does not prevent retrial of an aggravating factor for sentencing purposes).

*People v. Vance*, 933 P.2d 576, 577 n.2 (Colo. 1997). Still, we ought to have a principled reason for doing so. Here, we do not discern one. We are persuaded by the Supreme Court's reasoning that double jeopardy concerns are not implicated in noncapital sentencing proceedings. Accordingly, we conclude that the Double Jeopardy Clause of the Colorado Constitution does not apply to the trial of the prior convictions allegation in this case.

### III. Conclusion

¶ 30 We hold that Colorado double jeopardy law does not apply to noncapital sentencing proceedings. Accordingly, double jeopardy does not bar trial of the defendant's habitual counts in this case. We therefore reverse the judgment of the court of appeals and remand for reinstatement of Porter's habitual counts.

JUSTICE MÁRQUEZ does not participate.