Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
May 22, 2023

**2023 CO 25**

**No. 23SA30, *In re People v. Woodside* — § 42-4-1307, C.R.S. (2022) — Second Drug- or Alcohol-Related Traffic Offenses — Statutory Interpretation.**

In this original proceeding, the supreme court considers whether the sentence imposed for a "second offense" must arise out of conduct that occurred after a sentence imposed for a "first offense." Section 42-4-1307(5)(a), C.R.S. (2022), imposes more serious penalties on a defendant who commits a drug- or alcohol-related traffic offense if "at the time of sentencing" they have a "prior conviction" for a related offense.

The supreme court now holds that the plain language of section 42-4-1307(5)(a) imposes second-offense penalties when a defendant has a relevant prior conviction at the time of sentencing; it does not require that conduct underlying a second-offense sentence occur after conduct underlying the first-offense sentence. The court accordingly discharges the rule to show cause.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

---

**2023 CO 25**

---

**Supreme Court Case No. 23SA30**
*Original Proceeding Pursuant to C.A.R. 21*
Weld County Court Case No. 21T5286
Honorable John Briggs, Judge

---

**In Re**
**Plaintiff:**

The People of the State of Colorado,

v.

**Defendant:**

Jacob Woodside.

---

**Rule Discharged**
*en banc*
May 22, 2023

---

**Attorneys for Defendant:**
Megan A. Ring, Public Defender
Andrew Sidley-MacKie, Deputy Public Defender
 *Greeley, Colorado*

**Attorneys for Respondent Weld County Court:**
Philip J. Weiser, Attorney General
Rachel Lieb, Assistant Attorney General
Emily B. Buckley, Senior Assistant Attorney General
 *Denver, Colorado*

No appearance on behalf of Plaintiff.

**JUSTICE HART** delivered the Opinion of the Court, in which **CHIEF JUSTICE BOATRIGHT**, **JUSTICE HOOD**, **JUSTICE GABRIEL**, **JUSTICE SAMOUR** and **JUSTICE BERKENKOTTER** joined.
**JUSTICE MÁRQUEZ** dissented.

JUSTICE HART delivered the Opinion of the Court.

¶1     People who are convicted for drug- or alcohol-related traffic offenses in Colorado are subject to progressively more serious penalties upon each additional conviction. Section 42-4-1307(5)(a), C.R.S. (2022), provides the penalties for a second offense of driving under the influence ("DUI"), DUI per se, or driving while ability impaired ("DWAI"). This provision applies to those defendants "who, at the time of sentencing, ha[ve] a prior conviction" for certain related offenses. *Id.*

¶2     Jacob Woodside committed two alcohol-related offenses in relatively quick succession. First, he pled guilty to the later-committed offense, which was sentenced as his first despite having occurred second in time. Afterward, he pled guilty to the earlier-committed offense and argued that it too should be sentenced as his first. The trial court disagreed, finding that Woodside's prior conviction subjected him to second-offense penalties because "at the time of sentencing" he had a relevant "prior conviction," despite the order in which the offenses occurred.

¶3     Woodside filed a petition to show cause under C.A.R. 21, which we granted. We now hold that the plain language of section 42-4-1307(5)(a) imposes second-offense penalties when a defendant has a relevant prior conviction; it does not require that conduct underlying a second-offense sentence pre-date conduct underlying the first-offense sentence. Accordingly, we discharge the rule.

3

## I. Facts and Procedural History

¶4 On August 22, 2021, Woodside was charged in Weld County with DUI, § 42-4-1301(1)(a), C.R.S. (2022), for an offense committed that day. On November 11, 2021, Woodside was again charged with DUI for an offense committed that day—this time in Grand County.

¶5 Though Woodside's Grand County offense came second, the case resolved first. On March 1, 2022, Woodside pled guilty in Grand County to DWAI, § 42-4-1301(1)(b). The plea agreement stipulated that this was Woodside's first offense, and he was sentenced to one year of probation on April 26, 2022.

¶6 Meanwhile, the Weld County case remained pending. Through counsel, Woodside requested at least two continuances in Weld County to allow the Grand County case to resolve. On June 21, 2022, Woodside entered a plea agreement under which he again pled guilty to DWAI as a first offense.

¶7 At a July 26, 2022 sentencing hearing, the parties disputed whether the Weld County DWAI should be sentenced as a second offense. The court ultimately concluded that although Woodside committed the conduct underlying the Weld County case first, his Grand County conviction nonetheless was a "prior conviction" existing "at the time of sentencing." The court therefore determined that it would sentence the Weld County DWAI as a second offense and set the case

4

over for a status conference to allow Woodside and his counsel to discuss whether to withdraw his guilty plea and proceed to trial.

¶8 Woodside then filed this petition pursuant to C.A.R. 21, which we granted.

## II. Jurisdiction

¶9 Exercise of this court's original jurisdiction under C.A.R. 21 is wholly discretionary. C.A.R. 21(a)(1). Relief pursuant to C.A.R. 21 is "an extraordinary remedy that is limited in both purpose and availability." *People in Int. of T.T.*, 2019 CO 54, ¶ 16, 442 P.3d 851, 855–56 (quoting *Villas at Highland Park Homeowners Ass'n v. Villas at Highland Park, LLC*, 2017 CO 53, ¶ 22, 394 P.3d 1144, 1151). We have found such relief appropriate "when an appellate remedy would be inadequate, when a party may otherwise suffer irreparable harm, [or] when a petition raises 'issues of significant public importance that we have not yet considered.'" *People v. Kilgore*, 2020 CO 6, ¶ 8, 455 P.3d 746, 748 (citations omitted) (quoting *Wesp v. Everson*, 33 P.3d 191, 194 (Colo. 2001)).

¶10 Exercise of our original jurisdiction under C.A.R. 21 is warranted here. First, neither this court nor the court of appeals has addressed whether a second-offense sentence for intoxicated driving can be based on conduct pre-dating the first offense under section 42-4-1307(5)(a). Second, if it cannot, the trial court's decision to the contrary would cause irreparable harm for which an appellate remedy would be inadequate.

¶11    We now turn to the merits of the petition.

### III. Analysis

¶12    We review issues of statutory interpretation de novo. *UMB Bank, N.A. v. Landmark Towers Ass'n*, 2017 CO 107, ¶ 22, 408 P.3d 836, 840. Our primary aim is to "effectuate the legislature's intent." *Nieto v. Clark's Mkt. Inc.*, 2021 CO 48, ¶ 12, 488 P.3d 1140, 1143. In so doing, "we look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts, and we apply words and phrases in accordance with their plain and ordinary meanings." *Blooming Terrace No. 1, LLC v. KH Blake St., LLC*, 2019 CO 58, ¶ 11, 444 P.3d 749, 752 (quoting *UMB Bank*, ¶ 22, 408 P.3d at 840). If statutory language is clear and unambiguous, "we apply it as written—venturing no further." *Id.*

¶13    Section 42-4-1301 provides for various drug- and alcohol-related driving offenses, including DUI and DWAI. § 42-4-1301(1)(b). Section 42-4-1307 sets out the penalties for violations of section 42-4-1301. For a first offense, a defendant is subject to between 2 and 180 days in jail, which may be suspended on certain conditions; a fine, which may be suspended; and at least twenty-four hours of community service. § 42-4-1307(4)(a)(I)–(III). Up to two years of probation is also within the sentencing court's discretion. § 42-4-1307(4)(c).

¶14    A second offense carries greater penalties—between ten days and a year in jail; a higher fine, which may still be suspended; at least forty-eight hours of

community service; and one additional year of jail suspended pending two years of probation. § 42-4-1307(5)(a)(I)–(IV). Second-offense penalties apply to

> a person who is convicted of DUI, DUI per se, or DWAI *who, at the time of sentencing, has a prior conviction* of DUI, DUI per se, DWAI, vehicular homicide . . . vehicular assault . . . aggravated driving with a revoked license . . . or driving while the person's driver's license was under restraint[.]

§ 42-4-1307(5)(a) (emphasis added). "Conviction" is defined in the statute to include "a plea of guilty . . . that is accepted by the court." § 42-4-1307(2)(b).

¶15 By this plain language, then, a defendant is subject to second-offense penalties if at the time of sentencing they have already pled guilty to another DWAI and that plea has been accepted by the court.

¶16 Woodside concedes that a "second offense" under the statute requires only a "prior conviction" existing "at the time of sentencing." He argues, however, that for a "conviction" to be "prior" it must be for conduct pre-dating the second offense.

¶17 But nowhere does the plain language of section 42-4-1307(5)(a) contemplate the timing of the underlying conduct. Certainly, the word "prior" incorporates some temporal consideration. *See, e.g.*, *Prior*, Black's Law Dictionary (11th ed. 2019) (defining "prior" as "[p]receding in time or order"). But as used in section 42-4-1307(5)(a), "prior" modifies "conviction," which the statute in turn defines to include an accepted guilty plea.

7

¶18 To adopt Woodside's definition of "prior" would require us to read a slew of words into the statute that the legislature could have, but did not, include. Indeed, other subsections of the statute *do* contemplate the timing of the underlying conduct—but with notably different language. Take, for example, section 42-4-1307(5)(b), which provides additional considerations for second-offense sentencing. Under that subsection, a court's discretion to employ sentencing alternatives is curbed "[i]f a person is convicted of DUI, DUI per se, or DWAI *and the violation occurred less than five years after the date of a previous violation for which the person was convicted*." § 42-4-1307(5)(b) (emphasis added).

¶19 Similarly, section 42-4-1307(6)(a) provides for third-offense penalties, which apply when a person "has two or more prior convictions" for a related offense. Later, section 42-4-1307(6)(c) provides for additional conditions a court may impose, which "appl[y] *only if*" (1) "[a]t the time of sentencing the person has two prior convictions" for relevant offenses *and* (2) "[t]he first of the person's two prior convictions was *based on a violation that occurred not more than seven years before the violation for which the person is being sentenced*." § 42-4-1307(6)(c)(I)–(II) (emphases added).

¶20 Both section 42-4-1307(5)(b) and section 42-4-1307(6)(c) plainly differentiate between "convictions" and the "violations" underlying them and incorporate a temporal requirement that certain "violations" pre-date others. Nowhere in

8

section 42-4-1307(5)(a), however, is there mention of the violations underlying prior convictions or a similar temporal requirement. This provision refers only to "convictions"—a word that is explicitly defined in the statute—again, with no mention of the underlying "violation." *See* § 42-4-1307(2)(b). Instead, the plain language of section 42-4-1307(5)(a) incorporates only one temporal requirement: that Woodside's accepted guilty plea—his conviction—in Grand County pre-date his sentencing in Weld County.

¶21 Not only is Woodside's proposed construction of the statute contrary to the plain language adopted by the General Assembly, it would also lead to absurd results, as this case itself demonstrates. Woodside is asserting that having pled guilty to two distinct incidents of intoxicated driving, he should be sentenced for two first offenses. But he did not commit two *first* offenses; he committed two offenses.

¶22 Woodside's interpretation would incentivize gamesmanship by allowing defendants to forestall resolution of an earlier case while resolving a later one to get first-offense treatment in both. Worse still, it would have difficult downstream effects. What would happen to a defendant who, having been sentenced for two first offenses, commits another DWAI? Should they be sentenced for a second offense, since both prior convictions were for first offenses? Or should they be

sentenced for a third offense, despite never having been sentenced for a second? Hewing to the plain language of section 42-4-1307(5)(a) avoids such complications.

¶23 Woodside argues that if his Weld County DWAI is sentenced as a second offense, he will essentially be punished twice for his conduct in Grand County in violation of the prohibition against double jeopardy. But Woodside cannot identify what the second punishment would be. He was sentenced once for a first intoxicated driving offense in Grand County, and he has been sentenced once for a second intoxicated driving offense in Weld County. And he has pled guilty to two such offenses.

## IV. Conclusion

¶24 The plain language of section 42-4-1307(5)(a) does not require that conduct underlying a second offense pre-date conduct underlying the first. It requires only that a defendant have a relevant prior conviction at the time of sentencing for the second offense. The trial court therefore properly determined that Woodside's Weld County DWAI, though based on conduct pre-dating his Grand County DWAI, is a second offense subject to the penalties laid out in section 42-4-1307(5)(a). Accordingly, we discharge the rule to show cause.

**JUSTICE MÁRQUEZ** dissented.

10

JUSTICE MÁRQUEZ, dissenting.

¶25    More than forty years ago, this court recognized "[t]he general rule . . . that penalty enhancement statutes for repeat offenders apply only if the presently charged offense was committed after there had been a conviction of any offenses sought to be used as a basis for the penalty enhancement." *People v. Nees*, 615 P.2d 690, 693 (Colo. 1980). Indeed, recidivist sentencing schemes avoid double jeopardy concerns precisely because the enhanced penalties for subsequent offenses do *not* constitute an "additional penalty for the *earlier* crimes," but instead reflect "a stiffened penalty for *the latest crime*" due to the repetitive nature of that later offense. *Monge v. California*, 524 U.S. 721, 728 (1998) (emphases added) (quoting *Gryger v. Burke*, 334 U.S. 728, 732 (1948)). With these principles in mind, section 42-4-1307, C.R.S. (2022), is entirely constitutional to the extent that it imposes greater penalties for a defendant's *subsequent* drug- or alcohol-related traffic offenses. Accordingly, a "prior conviction" under this scheme necessarily refers to a conviction for an offense committed before the "subsequent" offense being sentenced as recidivist. That is the point of such a sentencing scheme, and this logical understanding is reflected in the language and structure of section 42-4-1307. The majority's interpretation of the statute nevertheless ignores the sequence of a defendant's offenses and erroneously permits a defendant's *first* offense to be punished as though it were the defendant's second or subsequent

1

offense. Indeed, depending on the sequence of a defendant's convictions and sentences, the majority's interpretation could result in a defendant with two offenses being punished twice for a "second" offense without ever being sentenced for a first offense. Because the majority's interpretation disregards the plain language of section 42-4-1307, ignores traditional sentencing principles, and raises constitutional concerns, I respectfully dissent.

## I. Statutory Interpretation

¶26 As the majority correctly states, our primary aim with statutory interpretation is to give effect to legislative intent. Maj. op. ¶ 12. We give words and phrases their plain and ordinary meanings, and we look to the statutory scheme as a whole to give consistent, harmonious, and sensible effect to all its parts. *See id.*

¶27 Section 42-4-1307 sets forth comprehensive penalties for traffic offenses involving drugs or alcohol. The statute prescribes penalties for first offenses in subsection (3) ("First offenses—DUI and DUI per se") and subsection (4) ("First offenses—DWAI"). §§ 42-4-1307(3)–(4). It then imposes progressively harsher penalties for a defendant's second and subsequent offenses. Second offenses are addressed in subsection (5) ("Second offenses"); third and subsequent offenses are addressed in subsection (6) ("Third and subsequent offenses"); and felony offenses are addressed in subsection (6.5) ("Felony offenses"). §§ 42-4-1307(5)–(6.5).

¶28 Unsurprisingly, the provisions that impose penalties for second and subsequent offenses refer to a defendant's "prior convictions." Thus, for example, a defendant may be punished for a "second offense" if the defendant, "at the time of sentencing, has a prior conviction of DUI, DUI per se, or DWAI." § 42-4-1307(5)(a). Similarly, a defendant may be punished for a "[t]hird or subsequent offense" if the defendant, "at the time of sentencing, has two or more prior convictions" of an alcohol-related traffic offense. § 42-4-1307(6)(a). The question before us is whether the term "prior conviction" under this statutory scheme refers to a conviction for an offense committed before the (subsequent) offense being sentenced as recidivist. The answer is yes.

¶29 First, the term "prior conviction" is generally used interchangeably with the term "prior offense." *See Prior conviction*, Black's Law Dictionary (11th ed. 2019) (describing "prior conviction" as another term for "prior offense; prior crime; antecedent crime; antecedent offense"); *see also People v. Porter*, 2015 CO 34, ¶ 26, 348 P.3d 922, 928 (referring interchangeably to "prior conviction[]" and "previous offense").

¶30 Second, as described above, the structure and organization of section 42-4-1307 contemplate offenses that occur sequentially; that is, the recidivist sentencing scheme authorizes progressively harsher punishment for later, "subsequent" offenses. In short, chronology matters.

¶31 Third, despite acknowledging that we must "look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts," Maj. op. ¶ 12, the majority fails to read section 42-4-1307 as a whole. Although subsection (5)(a) does not expressly define the necessary sequence of offenses, the majority concedes that other provisions in the statute *do* contemplate the timing of the underlying conduct. Maj. op. ¶ 18. For example, with regard to sentencing for a second offense, section 42-4-1307(5)(b) makes clear that the court has no discretion to employ certain sentencing alternatives if the person is convicted of a second offense "and the violation occurred less than five years after the date of a previous violation for which the person was convicted" of a similar alcohol-related offense. § 42-4-1307(5)(b). This provision, which directly follows subsection (a) referring to the defendant's "prior conviction," shows that the "violation" underlying the prior conviction must predate the second offense. In other words, I cannot see how the reference to "prior conviction" in subsection (5)(a) means anything other than "a previous violation for which the person was convicted" in subsection (5)(b).

¶32 The provisions regarding sentencing for third and subsequent offenses are even more clear. In detailing the punishments authorized for such offenses, section 42-4-1307(6)(c)(II) provides that the court may require a defendant to participate in alcohol treatment as a condition of probation if "*[t]he first of the*

4

*person's two prior convictions was based on a violation that occurred not more than seven years before the violation for which the person is being sentenced.*" § 42-4-1307(6)(c)(II) (emphasis added).  This language establishes that the "prior convictions" in this sentencing scheme concern violations that predate the offense for which the person is being sentenced as a recidivist.  The majority's reading of subsection (5)(a) in isolation, without considering the remainder of section 42-4-1307, defies traditional canons of statutory construction.

¶33    The legislative history of section 42-4-1307(5)(a) further bolsters my understanding of the scheme.  As introduced, H.B. 10-1347 evinced clear legislative intent to apply second-offense penalties to defendants for a drug- or alcohol-related violation that occurred *after* an earlier violation:

> (5) Second offenses. (a) EXCEPT AS OTHERWISE PROVIDED IN SUBSECTION (6) OF THIS SECTION, A PERSON WHO IS CONVICTED OF DUI, . . . *WHICH VIOLATION OCCURRED AFTER THE DATE OF A PREVIOUS VIOLATION FOR WHICH THE PERSON HAS BEEN CONVICTED* OF DUI . . . SHALL BE PUNISHED BY . . . .

H.B. 10-1347, 67th Gen. Assemb., 2nd Sess. (text of the bill as introduced in the House Judiciary Committee (emphasis added)).  The italicized language in the original bill, "*which violation occurred after the date of a previous violation for which the person has been convicted*" parallels the language discussed above in subsections (5)(b) and (6)(c)(II) regarding the sequence of violations and corresponding convictions.  In an amendment, the legislature replaced this

5

language with, "who, at the time of sentencing, has a prior conviction." *See* Amendment L.005 to H.B. 10-1347, 67th Gen. Assemb., 2nd Sess. (Mar. 11, 2010). The bill's sponsor explained that the amendment merely "rewords a little bit how we describe a second offense or a third offense"—and was "*not a substantive change.*" Hearing on H.B. 10-1347 before the H. Judiciary Comm., 67th Gen. Assemb., 2nd Sess. (Mar. 11, 2010) (emphasis added). In sum, the plain language, statutory structure, and legislative history of section 42-4-1307 all point to legislative intent to treat a "prior conviction" as a conviction for a violation committed *before* the offense being sentenced as recidivist.

## II. Double Jeopardy

¶34 In addition to disregarding the plain language of the statute, the majority's interpretation raises constitutional concerns because it permits a court to sentence a defendant's first offense more harshly as a second or subsequent offense based on conduct committed after the offense for which the defendant is being sentenced. Maj. op. ¶ 3.

¶35 The Double Jeopardy Clauses in the United States and Colorado Constitutions protect defendants from multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165 (1977); *Porter*, ¶ 9, 348 P.3d at 924; *see also* U.S. Const. amend. V ("[N]or shall any person be subject for the same offence to be

twice put in jeopardy of life or limb . . . .");[1] Colo. Const. art. II, § 18 ("[N]or shall any person be twice put in jeopardy for the same offense.").

¶36    An enhanced sentence for recidivist conduct does not violate double jeopardy principles because it "penaliz[es] only *the last offense* committed by the defendant." *Monge*, 524 U.S. at 728 (emphasis added) (quoting *Nichols v. United States*, 511 U.S. 738, 747 (1994)). In other words, a recidivist sentencing statute "do[es] not change the penalty imposed for the earlier conviction." *Nichols*, 511 U.S. at 747. Rather, it enacts "a stiffened penalty for the latest crime, which is considered to be an aggravated offense *because a repetitive one*." *Gryger*, 334 U.S. at 732 (emphasis added). Said another way, recidivism-based sentence enhancements are constitutional because they increase a defendant's sentence based on "the manner in which [the defendant] committed the crime of conviction." *Monge*, 524 U.S. at 728 (alteration in original) (quoting *United States v. Watts*, 519 U.S. 148, 154 (1997)).

¶37    Thus, while it is permissible to impose greater penalties for second and subsequent drug- or alcohol-related traffic offenses, the majority's interpretation

---

[1] The Double Jeopardy Clause found in the Fifth Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

of section 42-4-1307(5)(a) permits the imposition of greater, subsequent-offense penalties on a defendant's first offense. *See* Maj. op. ¶ 14 (acknowledging that a second offense "carries greater penalties" including a higher fine, additional jail time, and more hours of community service).

¶38 This case illustrates the constitutional flaw in the majority's interpretation. Certainly Woodside's multiple offenses could have authorized sentencing as a recidivist—for his *second* offense in Grand County. But none of the constitutional justifications for imposing the second-offense penalties apply to Woodside's *Weld County offense*. We cannot say that "the manner in which [Woodside] committed" the *Weld County offense* justified an increased penalty. *See Watts,* 519 U.S. at 154. Specifically, we cannot say that the *Weld County offense* deserved "a stiffened penalty" because it was a "repetitive one." *See Gryger*, 334 U.S. at 732. The Weld County offense was Woodside's first; the Grand County offense had yet to occur. In short, none of the rationales that save recidivism-based sentence enhancement schemes from violating double jeopardy principles apply in this case.

¶39 Thus, I disagree with the majority's conclusion that there is no double jeopardy problem in this case. And so, I disagree with the majority's interpretation of section 42-4-1307(5)(a), which sanctions the above-described double jeopardy violation. *See McCoy v. People*, 2019 CO 44, ¶ 50, 442 P.3d 379, 391 (stating we must

"avoid[] interpreting the statute in such a way as to lead to . . . unconstitutional results").

## III.  Practical Concerns

¶40    According to the majority, Woodside's interpretation would "lead to absurd results" and "incentivize gamesmanship by allowing defendants to forestall resolution of an earlier case while resolving a later one to get first-offense treatment in both."  Maj. op. ¶¶ 21–22.  But any potential gamesmanship feared by the majority can be avoided.  In this case, for example, the judge presiding over the Grand County offense could have delayed sentencing until after the resolution of the Weld County offense.  Then, Woodside would have been sentenced as a first offender for the Weld County offense and as a recidivist for his second offense in Grand County—a perfectly constitutional outcome.

¶41    Meanwhile, suggesting possible gamesmanship by defendants, the majority construes section 42-4-1307 to permit unconstitutional results.  While the practical and logistical challenges that arise in multiple offense/multiple jurisdiction scenarios like these are real, they cannot trump the constitution.

## IV.  Conclusion

¶42    Because the majority's interpretation of section 42-4-1307(5)(a) is contrary to the statute's plain language and legislative history, ignores traditional sentencing principles, and raises significant constitutional concerns, I respectfully dissent.

9